Azra Z. Mehdi (220406)
The Mehdi Firm
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 (fax)
azram@themehdifirm.com

Clayton D. Halunen (admitted *phv*)
Susan M. Coler
Melissa W. Wolchansky
Halunen & Associates
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 605-4098
(612) 605-4099 (fax)
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Alec Fisher, et al.,<br><br>              Plaintiffs,<br><br>      vs.<br><br>Monster Beverage Corporation., et al.,<br><br>              Defendants. | ) Case No.: EDCV12-02188 VAP (OPX)<br>)<br>) **Plaintiffs' Opposition to Defendants'**<br>) **Motion to Dismiss First Amended**<br>) **Complaint**<br>)<br>) Date: June 17, 2013<br>) Time: 2:00 p.m.<br>) Courtroom: The Hon. Virginia A. Phillips<br>)<br>)<br>) |

# TABLE OF CONTENTS

I. SUMMARY OF FACTS AND ARGUMENT ........................................................... 1

II. LEGAL STANDARD ON A MOTION TO DISMISS .................................... 3

III. ARGUMENT ................................................................................................. 4

    A. The AC Easily Meet the Standards of Both Rules 8(a) and 9(b). ............. 4

    B. Plaintiffs Have Established Standing ........................................................... 8

    C. Plaintiffs' Claims Are Not Preempted — They Do Not
        Seek to Enforce Federal Regulations, Nor Are Such Regulations a
        Necessary Element of the Claims. ........................................................... 10

    D. The Primary Jurisdiction Doctrine Is Inapplicable
        Here as This Is Precisely the Sort of Fact-Specific Case that
        Is Best Resolved by a Court. ................................................................. 17

    E. The UCL, FAL and CLRA Claims State a Claim for Relief. .................... 18

        1. Plaintiffs Sufficiently Plead Reliance. ................................................ 18

        2. The AC Sufficiently Pleads the Failure to Warn Claim. ................. 20

    F. Plaintiffs Sufficiently Allege a Breach of Warranty Claim. ...................... 22

        1. Plaintiffs Adequately Pled Breach of Express Warranty. .............. 22

        2. Plaintiffs Have Adequately Pled Breach of Implied Warranty. ..... 24

    G. Plaintiffs Have Sufficiently Pled a Violation of the MMWA. ................. 24

    H. Plaintiffs May Plead Unjust Enrichment in the Alternative. .................... 25

IV. CONCLUSION ........................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Altria Group, Inc. v. Good,*
   555 U.S. 70, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008) .................................................11

*Anderson v. Jamba Juice Co.,*
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) .........................................................................7

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................................3, 5

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   No. C 10–4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ..........................25

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
   No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ...........................6

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..........................................3, 4

*Boysen v. Walgreen Co.,*
   No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ............................10

*Brazil v. Dole Food Co.,*
   No. 12-CV-01831-LHK, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) ..............9, 16

*In re Brazilian Blowout Litig.,*
   No. CV 10-8452-JFW, 2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011) ..23

*Brod v. Sioux Honey Ass'n, Co-op.,*
   No. C–12–1322 EMC, 2013 WL 752479 (N.D. Cal. Feb. 27, 2013) .......................10

*Bronson v. Johnson & Johnson, Inc.,*
   No. C 12–04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...............20, 24

*Brown v. Hain Celestial Group, Inc.,*
   No. C 11-03082 LB, 2012 WL 6697670 (N.D. Cal. Dec. 22, 2012) ..................22, 23

*Buckman Co. v. Plaintiffs' Legal Committee,*
   531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ..........................................14

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (E.D. Cal. 2012) ........................................................ 8

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*,
   497 F.3d 972 (9th Cir. 2007) ................................................................... 3

*Chacanaca v. The Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................. 18

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010) .................................................................. 11

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ................................................................ 17

*Colucci v. ZonePerfect Nutrition Co.*,
   No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .............. 7

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
   432 F.3d 286 (3d. Cir. 2005) ................................................................... 9

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
   520 U.S. 806, 814, 117 S. Ct. 1747, 138 L. Ed. 2d 21 (1997) ................ 11

*Degelmann v. Advanced Medical Optics Inc.*,
   659 F.3d 835 (9th Cir. 2011) ................................................................... 9

*Delacruz v. CytoSport*,
   No. 11-3532 CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ........... 18

*English v. Gen. Elec. Co.*,
   496 U.S. 72, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) ........................ 11

*In re Facebook PPC Adver. Litig.*,
   709 F. Supp. 2d 762 (N.D. Cal. 2010) .................................................... 2

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................21, 22

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................. 24

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963) ........................ 11

*Freeman v. Time, Inc.,*
 68 F.3d 285 (9th Cir. 1995) ...................................................................... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
 528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ............................. 9

*In re Fruit Juice Products and Marketing Sales Practices Litigation,*
 831 F. Supp. 2d 507 (D. Mass. 2011) ........................................................ 10

*Hairston v. South Beach Beverage Co.,*
 No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ............... 24, 25

*Herron v. Best Buy Co.,*
 No. 2:12-cv-02103-GEB-JFM, 2013 WL 595474 (E.D. Cal. Feb. 14, 2013) .......... 21

*Ho v. Toyota Motor Corp.,*
 No. 12-2672 SC, 2013 WL 1087846 (N.D. Cal. Mar. 14, 2013) ...................... 21

*Holk v. Snapple Beverage Corp.,*
 575 F.3d 329 (3d Cir. 2009) ...................................................................... 12

*Int'l Dairy Foods Ass'n v. Boggs,*
 622 F.3d 628 (6th Cir. 2010) ..................................................................... 17

*Jones v. ConAgra Foods, Inc.,*
 No. C 12-01633 CRB, 2012 WL 6569393 (N.D. Cal. Dec. 17, 2012) .......... 6, 18, 25

*LeDuc v. Ky. Cent. Life Ins. Co.,*
 814 F. Supp. 820 (N.D. Cal. 1992) .............................................................. 3

*Lima v. Gateway, Inc.,*
 710 F. Supp. 2d 1000 (C.D. Cal. 2010) ........................................................ 8

*Lippitt v. Raymond James Fin. Servs.,*
 340 F.3d 1033 (9th Cir. 2003) ................................................................ 15, 16

*Lockwood v. ConAgra Foods, Inc.,*
 597 F. Supp. 2d 1028 (N.D. Cal. 2009) ...................................................... 18

*Loreto v. P&G Co.,*
 No. 10-4274, 2013 WL 645952 (6th Cir. Feb. 22, 2013) ............................... 14

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ............................. 8, 9

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) ...........................................11

*Morey v. NextFoods, Inc.*,
  No. 10 CV 761 JM (NLS), 2010 WL 2473314 (S.D. Cal. June 7, 2010).... 3, 7, 18, 20

*Peviani v. Natural Balance, Inc.*,
  774 F. Supp. 2d 1066 (S.D. Cal. 2011)..........................................................................6

*Pirozzi v. Apple Inc.*,
  No. 12-CV-01529 YGR, 2012 WL 6652453 (N.D. Cal. Dec. 20, 2012) ...................9

*Plumley v. Massachusetts*,
  155. U.S. 461, 15 S. Ct. 154, 39 L. Ed. 223 (1894) ....................................................11

*POM Wonderful LLC v. Coca-Cola Co.*,
  679 F.3d 1170 (9th Cir. 2012) ...............................................................................16, 17

*Reid v. Johnson & Johnson*,
  No. 11cv1310 L (BLM), 2012 WL 4108114 (S.D. Cal. Sept. 18, 2012).....................3

*Rikos v. P&G*,
  782 F. Supp. 2d 522 (2011) ........................................................................................20

*Rivera v. Wyeth-Ayerst Laboratories*,
  283 F.3d 315 (5th Cir. 2013) ......................................................................................10

*San Diego Cnty. Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ........................................................................................9

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3rd Cir. 1990) ......................................................................................16

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ........................................................................................5

*Shin v. BMW of North America*,
  No. CV 09-00398 AHM (AJWx), 2009 WL 2163509 (C.D. Cal. July 16, 2009) ....19

*Stanwood v. Mary Kay, Inc.*,
  No. SACV-12-00312-CJC, 2012 WL 7991231 (C.D. Cal. Sept. 20, 2012)...............21

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224 (9th Cir. 2013) ...............................................................................11, 16

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ............................................................................7, 19

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) ....................................................................... 5

*Williams v. Gerber Prods. Co.,*
    523 F.3d 934 (9th Cir. 2008) .................................................................19, 20

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ......................................................................... 4

*Wright v. Gen. Mills, Inc.,*
    No. 08cv1532 L (NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ................... 16

*Yourth v. Phusion Projects, LLC,*
    No. 1:11-CV-01261(NAM/CFH), slip op. (N.D.N.Y. Sept. 27, 2012)..................... 16

*Yumul v. Smart Balance, Inc.,*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................... 8

**California Cases**

*Collins v. eMachines, Inc.,*
    202 Cal. App. 4th 249 (2011) ...................................................................... 21

*Daugherty v. Am. Honda Motor Co., Inc.,*
    144 Cal. App. 4th 824 (2006) ...................................................................... 20

*Hauter v. Zogarts,*
    14 Cal. 3d 104 (1975) ................................................................................ 24

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ............................................................................... 20

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011)............................................................................9, 19

*Mass. Mut. Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002) ...................................................................... 20

*McAdams v. Monier, Inc.,*
    182 Cal. App. 4th 174 (2010) ...................................................................... 20

*Troyk v. Farmers Group, Inc.*,
    171 Cal. App. 4th 1305 (2009) ........................................................ 9

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) ...................................................................... 20

*In re Vioxx Class Cases*,
    80 Cal. App. 4th 116 (2009) ........................................................ 20

*Warner Constr. Corp. v. City of L.A.*,
    2 Cal. 3d 285 (1970) ...................................................................... 21

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) .................................................... 22

**Federal Statutes**

15 U.S.C.,
    § 2302(e) ........................................................................................ 24

21 U.S.C.,
    § 343-1(a) ...................................................................................... 16

Federal Food, Drug, and Cosmetic Act ...................................... 13, 14, 16, 18

Magnuson-Moss Warranty Act, 15 U.S.C.,
    § 2301 .............................................................................................. 4

**California Statutes**

Cal. Bus. & Prof. Code,
    § 17204 .......................................................................................... 19

Cal. Civ. Code
    § 1780(a) ........................................................................................ 19

California's Unfair Competition Law, Cal. Bus. & Prof. Code,
    §§ 17200, *et seq.* and 17500, *et seq.* .............................................. 4

Consumer Legal Remedies Act, Cal. Civ. Code,
    § 1750, *et seq.* ................................................................................ 4

**Other Authorities**

F.R.Civ.P. 8(a) .................................................................................................. 4

F.R.Civ.P. 8(a)(2) ............................................................................................. 4

F.R.Civ.P. 8(d)(2) ...........................................................................................25

F.R.Civ.P. 9(b) ....................................................................................... *passim*

F.R.Civ.P. 10(b) ..............................................................................................23

F.R.Civ.P. 12(b)(6) ....................................................................................... 3, 4

F.R.Civ.P. 12(f) ................................................................................................ 2

F.R.Civ.P. 15(a) ..............................................................................................25

## I.      SUMMARY OF FACTS AND ARGUMENT

Plaintiffs Alec Fisher, Matthew Townsend and Connor Rucks bring this action to address defendants Monster Beverage Corporation and Monster Energy Company's (collectively, "Monster") deliberate corporate strategy of aggressively and deceptively marketing Monster Energy® Branded Drinks ("Monster Drinks")[1] in a manner designed to make young people believe that it is perfectly normal — and indeed trendy and desirable — to drink large quantities of Monster Drinks throughout the day and night, despite their potency. For example, Monster goes to elaborate lengths to make its sponsored athletes and musicians appear to drink Monster Drinks throughout the day when in fact they are secretly drinking water disguised as Monster Drinks. ¶¶10, 79–84. Indeed, Monster's executives specifically developed Monster Drinks to go after "what young, male consumers really wanted" to make it "their lifestyle," even selecting the name "Monster Energy" from focus group results of teenage males. ¶¶42–45; Ex. A. Monster's 2009 internal marketing document evidences Monster's strategy to target kids as young as nine years old. ¶¶8, 53; Ex. A. To that end, Monster sponsors athletes 13 or younger and the Monster Army website is designed for young kids and has a massive following. ¶¶59, 68.

Monster is today's Joe Camel. ¶¶8–11, 44. Monster's advertising campaign is no different than the Joe Camel cigarette campaign that California courts found was an unfair, unlawful, and fraudulent business practice because it targeted minors. *Id.* Much like Joe Camel, Monster promotes "free" gear, which consumers of Monster Drinks can obtain by sending in tabs for hoodies, beanies and Monster Girls calendars. ¶¶66–67. Monster's use of women and sex to sell Monster Drinks only reinforces their corporate strategy — Monster even employs Ash Hodges, whose primary

---

[1] *See* Amended Complaint ("AC"), ¶¶1, 153 (listing out the 28 varieties at issue in this case). (All paragraph ("¶") and Exhibit references are to the AC filed on March 7, 2013. ECF 20.)

responsibilities include taking provocative videos of half- naked women and dirty talk. ¶¶60–65.

Meanwhile, the AC details numerous physician and scientific studies finding that the consumption of large amounts of caffeine, combined with other active ingredients like guarana, taurine, carnitine, sugar that are found in Monster Drinks, can have serious health consequences such as: insomnia, palpitations, tachycardia, hypertension, dehydration, kidney failure, and headaches. ¶¶7, 86, 96, 101–128; Ex. B. There are reports of serious bodily harm and death linked to Monster Drinks. ¶¶92–97; Ex. B. Monster, however, provides minimal general warnings regarding their Monster Drinks and ***none*** for the youth they target (¶88) about the serious health risks of the frequent and excessive consumption of Monster Drinks — consumption that defendants' practices are designed to encourage as being perfectly safe and normal by representing that Monster Drinks are the "***ideal combo of the right ingredients in the right proportion to deliver the big bad buzz***" or that it "hydrates like a sports drink." ¶¶73–81, 97–98. Each of these elements of defendants' scheme is alleged with particularity in the AC.

It is this corporate conduct that plaintiffs ask the Court to evaluate in light of state interests in consumer protection as it relates to health and safety. The AC alleges that Monster Drinks have not been through pre-market review by the U.S. Food and Drug Administration ("FDA") because of their designation as "dietary supplements" and the FDA concedes it has no authority to require Monster to do so. ¶¶7, 137. Ironically, the foregoing allegations and documents are precisely the documents and allegations that Monster wishes to strike claiming they are extraneous to what defendants ***pretend*** that this case is about.[2] But this case is not primarily about

---

[2] Defendants do not even seriously attempt to meet Rule 12(f)'s high bar. "Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *In re*

labeling and the FDA, so the question of preemption and primary jurisdiction is irrelevant. This case is not solely — or even primarily — about defendants' "beverages" or plaintiffs' experiences "purchasing or consuming those beverages."[3] Ironically, Monster only began classifying Monster Drinks as "beverages" in April 2013 and has only implemented this change in one flavor. Instead, this case is primarily about defendants' intentionally tortious and fraudulent corporate conduct. To wit, this case is about precisely what is in fact ***particularly alleged*** in the AC under precisely the appropriate and uniquely relevant state consumer-protection statutes. It is about a deliberate, tortious, reckless consumer-fraud scheme/pattern directed at consumers and particularly harmful for young people. This conduct violates state law and directly implicates the inherent constitutional right of states to protect their citizens.

## II.   LEGAL STANDARD ON A MOTION TO DISMISS

Neither *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), nor *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), requires that plaintiffs prove their case in the complaint or include every factual detail in support of their claims. In resolving a Rule 12(b)(6) motion, the Court must first accept all allegations of material fact as true and construe them in the light most favorable to the non-moving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of*

*Facebook PPC Adver. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010). A court should not strike allegations supplying background or historical material unless it is unduly prejudicial to the opponent. *See LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992); *see also Reid v. Johnson & Johnson*, No. 11cv1310 L (BLM), 2012 WL 4108114, at *12 (S.D. Cal. Sept. 18, 2012) (denying motion to strike scientific studies); *Morey v. NextFoods, Inc.*, No. 10 CV 761 JM (NLS), 2010 WL 2473314, at *3 (S.D. Cal. June 7, 2010) (denying motion to strike allegations containing advertisements that plaintiff neither saw, nor relied on).

[3] Ironically, Monster only began classifying Monster Drinks as "beverages" in April 2013 and has only implemented this change in one flavor.

*Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Twombly*, 550 U.S. at 555. As for the "plausibility" threshold set forth in *Twombly*, plaintiffs' allegations must be considered as a whole. *Id.* at 569, n.14. Courts do not require "heightened fact pleading of specifics." *Id.* at 555.

In particular, pre-discovery Rule 12(b)(6) motions to dismiss claims under the UCL, FAL, and CLRA are only appropriate in the most "rare" of circumstances.[4] *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). This is because the "reasonable consumer" standard — which governs the ultimate question of liability in UCL, FAL, and CLRA cases — is, by its very definition, a fact-based inquiry. *Id.*

## III.   ARGUMENT

### A.   The AC Easily Meet the Standards of Both Rules 8(a) and 9(b).

Judging from the extraordinary breadth of their motion to dismiss, along with the lengthy appendix and related motion to strike and request for judicial notice,[5] defendants have had more than a "fair opportunity to frame a responsive pleading." F.R.Civ.P. 8(a). Indeed defendants' kitchen-sink motion is so broad that it includes both a challenge to the particularity of the AC under Rule 8, as well as a challenge to a *lack* of particularity under Rule 9(b).

Rule 8 provides that a claim for relief must be supported by "a short plain statement showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2). A plaintiff need only "plead[] factual content that allows the court to draw the reasonable

---

[4] "UCL" refers to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* and 17500, *et seq.*; "FAL" refers to False Advertising Law; "CLRA" refers to Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*; and "MMWA" refers to Magnuson-Moss Warranty Act, 15 U.S.C. §2301.

[5] Defendants' motion plainly flouts this Court's rule limiting memoranda in support of motions to 25 pages, including a so-called "Appendix" of lengthy argument in tabular form. Meanwhile, the long-shot motion generally violates this Court's Standing Order. ECF 5 at 2–3 (discouraging motions to dismiss).

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiffs have certainly done that here.

As a general rule, a "pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir. 1985).[6] Plaintiffs' allegations also easily meet the requirements of Rule 9(b). Plaintiffs have adequately alleged "the who, what, when, where, and how" of the purportedly misleading statements. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). Specifically, the AC pleads:

**WHO & WHAT**: Plaintiffs have identified the 28 categories of Monster Drinks (¶¶1, 153) and its labeling and marketing as the deceptive products and identified defendants Monster Beverage Corporation and Monster Energy Company as the manufacturer and marketer (¶¶2, 25–26). Deceptive statements include: "It's the ***ideal combo of the right ingredients in the right proportion to deliver the big bad buzz that only Monster can***;" "our products are **safe** based on both our and the industry's long track record and the scientific evidence supporting the safety of our ingredients. We estimate that about 50 billion cans of energy drinks have been sold and ***safely consumed*** worldwide" (¶¶73–78, 88, 91, 98); "Delivers twice the buzz;" "quenches thirst;" "hydrates like a sports drink." Additionally, defendants misleadingly use water in Monster-branded cans to make it look like the celebrity musicians and athlete sponsors are drinking Monster Drinks to influence consumers. ¶¶79–84.

**WHEN**: The false, misleading, deceptive, and unfair statements were made from at least December 12, 2008 to the present. ¶¶1, 153. The AC identifies when

---

[6] Citations and internal quotations are omitted and emphasis is added unless otherwise noted.

each of the plaintiffs purchased the Monster Drinks — Fisher and Townsend since

2007 (¶¶22–23, 29–31, 34) and Rucks since 2003 (¶¶25, 37).

**WHERE & HOW**: The false, misleading, deceptive and unfair statements

were made at the point-of-sale on the Monster Drinks themselves, as well as on

defendants' website and other promotional materials. ¶¶53–89. Plaintiffs also explain

how the statements are deceptive because they are marketed as safe via

playful/seductive advertising and product placement near sports drinks and juices but

fail to warn of the serious health risks of consumption of Monster Drinks by the

youth and children that they target with their advertising (¶¶4, 53–72); and that

plaintiffs bought Monster Drinks reasonably relying on defendants'

misrepresentations and omissions (¶¶29–37).

Plaintiffs' allegations satisfy Rule 9(b). *See, e.g.*, *Peviani v. Natural Balance, Inc.*, 774

F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (Rule 9(b) met where plaintiff provided the

"what" and "who" by identifying "Cobra Sexual Energy" and its labeling as the

allegedly deceptive product and Natural Balance as its manufacturer and marketer;

plaintiff provides the "when" by stating the year that she bought the product at a CVS

pharmacy; and the "where" and "how" by providing pictures of the product's labels

and listing the challenged statements with an explanation of how they are deceptive);

*accord Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2012 WL 6569393, at *10

(N.D. Cal. Dec. 17, 2012) (same).

Contrary to defendants' claim, plaintiffs may represent and allege claims for all

28 varieties of Monster Drinks. ECF 28 at 6. The majority of the courts that have

analyzed this question hold that a plaintiff may have standing to assert claims for

unnamed class members based on products he or she did not purchase so long as the

products and alleged misrepresentations are substantially similar. *See, e.g.*, *Astiana v.*

*Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D.

Cal. July 20, 2012) (where plaintiffs are challenging the same basic mislabeling practice

across different ice-cream flavors, the difference in ingredients is not dispositive, "the

critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased"); *see also Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (denying defendants' motion to dismiss for lack of standing where plaintiff had purchased two of the five smoothie-kit flavor varieties finding that there was sufficient similarity between the products purchased). Here, the different varieties of Monster Drinks are substantially similar since the core ingredients are similar even where the flavor may vary. *See Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (finding that plaintiff who bought only one variety of a nutrition bar had standing under both Article III and UCL purposes to sue for alleged mislabeling of all 20 nutrition bar flavors).

Defendants' contention that plaintiffs offer little or no factual support for their "health risks" allegations, is specious. ECF 28 at 6–7. The AC is replete with facts regarding scientific studies and other reports — allegations that defendants seek to strike — that underscore the dangers of consumption of all energy drinks, including specifically Monster Drinks. ¶¶86, 92 (six death reports mentioned consumption of Monster Drinks), 97, 101–106; Ex. B (detailing adverse events linked to Monster Drinks). Defendants also confuse the specificity requirements of Rule 9(b), claiming that plaintiffs do not identify the particular advertisement or misleading label upon which they relied in making their purchases. At the pleading stage, however, a plaintiff is "not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Morey*, 2010 WL 2473314, at *2 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)) (finding that plaintiff's allegations that she purchased defendant's products in reliance on NextFoods' advertising is sufficient).

Defendants contend that the AC failed to specifically connect defendants' marketing campaign to plaintiffs. ECF 28 at 8. It does. The AC alleges defendants' unique marketing scheme of "brand awareness through image enhancing programs

and product sampling" targeted to youth and minors and then directly ties it in to plaintiffs' experiences — Fisher and Rucks tried their first Monster Drink as teenagers when they got a free can from a Monster truck parked outside their high school. ¶¶29, 32, 37; *see Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007–08 (C.D. Cal. 2010) (denying motion to dismiss noting: "[Defendants'] statements, however, cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole. . . . The relevant question is whether the statements, taken as a whole, are likely to deceive members of the public.").

Finally, defendants claim *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 993 (E.D. Cal. 2012), was dismissed for failure to satisfy Rule 9(b). ECF 28 at 8. In fact, defendant's motion to dismiss was denied because the complaint there satisfied Rule 9(b). *See Cardenas*, 870 F. Supp. 2d at 994. Defendants are wrong that some or all of plaintiffs' claims may be time-barred based on *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010). ECF 28 at 8. Plaintiff in *Yumul* filed suit on February 8, 2010 alleging a class period going back ten years beginning January 1, 2000. 733 F. Supp. 2d at 1120. Plaintiffs here filed suit on December 12, 2012 for an appropriate class period of four years. ¶153.[7] The AC allegations are more than sufficient to give Monster fair notice of the particular misconduct forming the basis of plaintiffs' claims.

## B.    Plaintiffs Have Established Standing.

Each of the three plaintiffs has standing. Standing requires an injury in fact, which is traceable to the defendant's acts and redressable by a court decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Injury, in fact, results from the "invasion of a legally protected interest which

---

[7] To the extent that a three-year statute of limitations applies to CLRA claims, plaintiffs will make adjustments to the class definitions or create sub-classes as necessary at the class certification stage.

1   is … concrete and particularized." *Id.* at 560. "Particularized means that the injury

2   must affect the plaintiff in a personal and individual way." *Id.* at n.1.

3          "There are innumerable ways in which economic injury from unfair

4   competition may be shown." *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323

5   (2011). Lost money or property, as alleged in the AC, is "a classic form of injury in

6   fact." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183–84,

7   120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (economic harm is among the bases for

8   injury in fact); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1347 (2009)

9   (emphasis in original) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286,

10  291 (3d. Cir. 2005) ("'While it is difficult to reduce injury-in-fact to a simple formula,

11  ***economic injury*** is one of its paradigmatic forms.'")); *Pirozzi v. Apple Inc.*, No. 12-

12  CV-01529 YGR, 2012 WL 6652453, at *4 (N.D. Cal. Dec. 20, 2012) ("Overpaying for

13  goods or purchasing goods a person otherwise would not have purchased based upon

14  alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and

15  causation requirements for Article III standing.").

16         The Ninth Circuit has concluded that "economic injury is clearly a sufficient

17  basis for standing." *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130

18  (9th Cir. 1996); *see also Degelmann v. Advanced Medical Optics Inc.*, 659 F.3d 835, 839 (9th

19  Cir. 2011) (plaintiffs alleged inquiry where they purchased contact lens solution in

20  reliance on representations that it would disinfect their lenses and would not have

21  purchased the product had they known how poorly it actually worked). The court in

22  *Brazil v. Dole Food Co.*, No. 12-CV-01831-LHK, 2013 WL 1209955, at *12 (N.D. Cal.

23  Mar. 25, 2013), recently rejected a similar argument made by defendants here finding

24  plaintiff had Article III standing despite defendants' contention that plaintiff did not

25  suffer an injury in fact because he did not allege any physical harm was caused by

26  ingesting the product.

27         This is neither a personal injury nor products liability case. This case is about

28  Monster's failure to warn consumers of the dangers associated with consuming

1  Monster Drinks and the false and misleading representations and omissions in the

2  marketing, labeling and manufacturing of the products. Economic injury is one of the

3  many acceptable types of injury-in-fact, and it meets the broad standing requirement

4  of Article III.

5       Ignoring relevant precedent, defendants focus on decisions that are

6  distinguishable. In *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *6

7  (N.D. Cal. July 19, 2012), the court found that the complained-of-injury — lead in

8  fruit juice — had been deemed ***safe*** by the FDA.[8] The court found the plaintiff had

9  not alleged that "defendant's products exceed FDA guidelines for toxins in fruit

10  juices," and therefore, had not established that the "juices at issue were unfit for their

11  intended use." *Id.* Accordingly, the plaintiffs did not suffer injury-in-fact. *See id.*

12       Each of the plaintiffs purchased Monster Drinks believing they were safe for

13  consumption based upon Monster's labeling and marketing of the product. *See* ¶¶29,

14  36–37 (nothing on the labeling of the Monster Drinks led plaintiffs to believe that

15  drinking them could be bad for their health and the plaintiffs would not have spent

16  money buying Monster Drinks (i.e. economic injury) had Monster fully disclosed the

17  risks of consuming them).

18  **C.**    **Plaintiffs' Claims Are Not Preempted — They Do Not Seek to**

19        **Enforce Federal Regulations, Nor Are Such Regulations a**

20        **Necessary Element of the Claims.**

21       Federal preemption occurs when: (1) Congress enacts a statute that explicitly

22  preempts state law; (2) state law actually conflicts with federal law; or (3) federal law

23  _____

24  [8] *In re Fruit Juice Products and Marketing Sales Practices Litigation*, 831 F. Supp. 2d 507 (D.

25  Mass. 2011), which contains a similar analysis to that found in *Boysen*, *supra*, is
   distinguishable for the same reasons. *See also Brod v. Sioux Honey Ass'n, Co-op.*, No. C–

26  12–1322 EMC, 2013 WL 752479, at *7 (N.D. Cal. Feb. 27, 2013) (distinguishing

27  *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 320 (5th Cir. 2013) and *Boysen* to find
   that plaintiff who asserted claims under the UCL and CLRA had Article III standing).

28

occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). A court's preemption analysis must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996). Even "[i]f a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). The Supreme Court has repeatedly stated that "the mere existence of a federal regulatory scheme," even a particularly detailed one, "does not by itself imply pre-emption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990).

This approach "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Lohr*, 518 U.S. at 485. Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming 'th[is] starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (*en banc*) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814, 117 S. Ct. 1747, 138 L. Ed. 2d 21 (1997)).

There is an especially strong presumption against federal preemption in this case as the regulation of health and safety, is traditionally within states' historic police powers. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963) ("States have always possessed a legitimate interest in 'the protection of [their] people against fraud and deception in the sale of food products' at retail markets within their borders.") (quoting *Plumley v. Massachusetts*, 155 U.S. 461, 472, 15 S. Ct. 154, 39 L. Ed. 223 (1894)). Indeed the FDA has stated that it

does not intend to occupy the field of food and beverage labeling. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 338 (3d Cir. 2009) (state law not preempted).

The states' plenary control over food, health and safety is even more compelling in this case as it involves products that have already caused multiple injuries and deaths. Ex. B. This case also involves the deliberate targeting of young people through various dishonest practices that are aimed at convincing this particular age group recklessly to consume large amounts of the risky products. Ex. A. These young people are particularly susceptible to being influenced by defendants' dishonest practices, and they are also at an age that makes them particularly physically vulnerable to the toxicity and riskiness of defendants' products. ¶¶8, 53–84; Exs. A–B. Put simply, if there was ever a case in which there is a strong presumption against federal preemption — a case involving drinks, harm to citizens, young people and deceptive practices — this is it.

Nevertheless, consistent with the latest fad of raising long-shot preemption arguments in any case remotely referencing federal regulation, the defense here asserts that this case should be dismissed because it allegedly involves nothing more than food-labeling claims that "piggyback on alleged regulatory violations." ECF 28 at 13. The problem with this straw-man argument is that federal laws or regulations are not even a necessary element of the claims of this case. The FDA even concedes in this case that it has no authority to require Monster to pre-market review of Monster Drinks. ¶¶7,137.

This is not primarily a labeling case. Labeling and the FDA are part of the context of the case, but they are certainly not at its core. Defendants do not wish even to acknowledge this core. Perhaps this is why defendants on the first page of their motion to dismiss describe the AC as a confusing "propaganda piece." ECF 28 at 1. This so-called propaganda — the heart of this case — consists of detailed and compelling facts about defendants' tortious, reckless, fraudulent and unfair corporate conduct. These facts are clear and overwhelming. But instead of even addressing these

1  facts, defendants simply write off dozens of pages of allegations as "propaganda" that

2  need not be acknowledged, perhaps hoping that the Court does not actually read the

3  AC.

4          Plaintiffs do not claim that Monster's "Proprietary Blend" label disclosures, in

5  and of themselves, fail to comport with the corresponding basic labeling requirements

6  of the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Id.* at 15. Instead — to use

7  defendants' example of Starbucks to illustrate — other differences between the

8  **corporate conduct** of Monster and a company such as Starbucks are the true basis of

9  plaintiffs' claims — state-law claims that would be valid and overwhelming even if the

10  FDA, the FDCA and the National Labeling and Education Act ("NLEA") had never

11  existed.

12          Starbucks does not deliberately trick its target youth market into believing that

13  pro skateboarders, bikini models, rock stars, extreme sports athletes and other teen

14  idols are downing liters of Starbucks coffee throughout the day — when in fact they

15  are secretly drinking water disguised as Starbucks coffee. ¶¶79–81. Starbucks does not

16  target — as a matter of corporate strategy — young people born between 1985 and

17  2000. Ex. A. Starbucks does not sponsor punk rock musicians and extreme-sports

18  athletes. *Id.* Starbucks does not engage in a deliberate strategy to "influence the image

19  makers who influence their peers." *Id.* Starbucks does not promote new recipes for

20  alcohol drinks based on combining Starbucks coffee with alcohol. *Id.* Starbucks' image

21  is not "built" — again, as a matter of deliberate corporate strategy — upon "Action

22  Sports," "Music" and "Girls." *Id.* There are no scantily-clad "Starbucks Girls." ¶¶60–

23  66, 81; Ex. A. Starbucks' intentional and focused marketing message is not that

24  "[Starbucks] is about action sports, punk rock music, partying, girls, and living life on

25  the edge." *Id.* Starbucks does not give its adolescent customers free hoodies, beanies

26  and pin-up calendars if they send in 30 coffee lids. ¶¶66–68. Starbucks does not

27  promote its coffee with ads featuring a close-up shot of the rear of a young woman

28

1  wearing a thong bikini with a cup of Starbucks coffee tucked underneath the thong-
2  strap. *Id.*

3        These claims go far beyond labeling. Instead these are deliberate and
4  intentional tortious acts that violate the laws of California and other states, as detailed
5  in the AC and discussed *infra*, conduct that would violate state laws even in the
6  absence of the FDCA, NLEA and FDA. And as the Supreme Court has clarified, this
7  is precisely the test for whether or not a claim under state law is impliedly preempted
8  by federal regulation. If the state law claim — like the claims in this case — would
9  exist in the absence of the federal regulations, then the state law claim is by definition
10 not preempted. Specifically, in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341,
11 347, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001), the Supreme Court deemed preempted
12 a state tort claim that the defendant defrauded the FDA in the course of obtaining
13 approval for its medical devices and that, as a result, the devices improperly obtained
14 market clearance and were later used to the plaintiffs' detriment. The claims, the
15 Court held, did not rely on "traditional state tort law," for the FDCA's existence was
16 "a critical element" of the plaintiffs' case. *Id.* at 353. In other words, were it not for
17 the federal regulatory scheme that the FDCA created, there would have been no fraud
18 that could support the tort claim. As the Sixth Circuit recently stated: "The question,
19 then, is how to determine whether a claim formally asserted under state law is in
20 substance one seeking to enforce the FDCA." The Supreme Court supplied the test in
21 *Buckman*: If the claim would not exist in the absence of the FDCA, it is impliedly
22 preempted."[9] *Loreto v. P&G Co.*, No. 10-4274, 2013 WL 645952, at *2 (6th Cir. Feb.
23 22, 2013).

24

25 _____

26 [9] One can only imagine the injustices and absurdities that would result were this not
27 the rule. Without it, companies in compliance with the federal regulations pertinent to
   their industry could act with blanket impunity — even to the point of engaging in
28 extortion, fraud, theft or even murder. Indeed something akin to such impunity —

1    The reasoning in the Ninth Circuit opinion on preemption arguments regarding
2    a broker-dealer's sales of a product that had been approved by federal regulators
3    applies here:

4        [Plaintiff] Lippitt here makes no effort to enforce either a
5        provision of the [Securities Exchange Act of 1934 (hereinafter, the
6        "Exchange Act")] Act or a rule/regulation promulgated by the NYSE.
7        Rather, he seeks to use a state statute, namely California's Unfair
8        Competition Law, as a vehicle to hold Defendants liable for misleading
9        and deceptive practices associated with the sale and marketing of callable
10       CDs. . . .
11       We cannot allow Defendants' attempt to expand the scope of §27 [of the
12       Exchange Act] in a manner that vitiates state law remedies expressly
13       preserved by §28 [of the Exchange Act]. ***That the specific goal of***
14       ***protecting California customers from dishonest business practices,***
15       ***whether by brokers or otherwise, may comport with the broader***
16       ***regulatory goals of the Exchange Act and certain NYSE rules and***
17       ***regulations is not enough to sweep Lippitt's complaint within the***
18       ***exclusive jurisdictional ambit of §27.***

19   *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043–44 (9th Cir. 2003).

20       In the *Lippitt* complaint, the plaintiff described the riskiness of callable CDs in
21   order to remedy the dishonest business practices of the brokers. Here, plaintiffs
22   describe in their complaint the riskiness and toxicity of Monster Drinks in order to
23   place in proper relief the dishonest corporate conduct of defendants. In *Lippitt*,
24   the callable CDs are "approved" by the NYSE. Here, the Monster Drinks have not even

25

26
27   including the right to engage in fraud and cause the injury and even the death of
     Californians — is what Monster impliedly demands in its preemption arguments.
28

Pls' Opp. to Defs' MTD

15

been subject to pre-market review by the FDA. ¶¶7, 137. In *Lippitt*, the goal of protecting California customers from dishonest business practices comports with certain of the broader regulatory goals of the Exchange Act and certain NYSE rules. Here, the goal of protecting consumers from dishonest business practices comports with certain of the broader regulatory goals of the FDCA and NLEA and certain FDA rules. In *Lippitt*, the fact that the goals of California laws are **consistent** with certain of the goals of the Exchange Act and NYSE is not sufficient to sweep Lippitt's complaint within the exclusive jurisdictional ambit of §27. Here, the fact that the goals of state consumer-protection laws are **consistent** with certain of the goals of the FDCA and NLEA is not sufficient to sweep plaintiffs' AC within the exclusive jurisdictional ambit of the FDA and FDCA.

Moreover, the "jurisdictional ambit" of the FDA and FDCA are even more proscribed here than the Exchange Act was in *Lippitt*. To wit, the FDA and FDCA are simply "not focused on the truth or falsity of advertising claims." *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3rd Cir. 1990). For example, 21 U.S.C. §3431(a), the FDCA's preemption language upon which defendants rely, preempts only: (1) any non-identical requirement for a food which is the subject of a standard of identity; (2) any non-identical requirement for the labeling of food; and (3) any non-identical requirement for nutrition labeling of food. Meanwhile, the NLEA also contains an uncodified express savings clause: "The [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [§3431(a)]." *Wright v. Gen. Mills, Inc.* No. 08cv1532 L (NLS), 2009 WL 3247148, at *2 (S.D. Cal. Sept. 30, 2009) (citing Pub. L. No. 101535, §6(c)(1)).

Finally, defendants rely heavily upon *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1175 (9th Cir. 2012). Notably, in *Stengel*, which the Ninth Circuit heard *en banc* after *POM Wonderful*, the court held that state law claims that parallel federal law duties under the MDA of the FDCA are not preempted "either expressly or impliedly" by the FDCA. *Stengel*, 704 F.3d at 1233; *see also* Y*ourth v. Phusion Projects*,

1  *LLC*, No. 1:11-CV-01261(NAM/CFH), slip op. (N.D.N.Y. Sept. 27, 2012) (entirely

2  denying motion to dismiss state law claims for failure-to-warn despite the fact that

3  beverage label fully complied with applicable regulations)(attached as Exhibit 1 to the

4  Declaration of Azra Mehdi ("Mehdi Decl."), filed concurrently herewith); *Brazil*, 2013

5  WL 1209955, at *7(noting that *POM Wonderful* limited its ruling to federal Lanham

6  Act and explicitly declined to address if plaintiff's state law claims were preemption).

7  In so doing, the Ninth Circuit reiterated the strong "presumption against preemption

8  of state laws that operate in traditional state domains." *Id.* at 1227.[10]

9      **D.    The Primary Jurisdiction Doctrine Is Inapplicable Here as This Is**

10         **Precisely the Sort of Fact-Specific Case that Is Best Resolved by a**

11         **Court.**

12      The primary jurisdiction doctrine "is a 'prudential' one, under which a court

13  determines that an otherwise cognizable claim implicates technical and policy

14  questions that should be addressed in the first instance by the agency with regulatory

15  authority over the relevant industry rather than by the judicial branch." *Clark v. Time*

16  *Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

17      First, no technical questions are created by this case that requires any particular

18  expertise. On the contrary, this is a "total circumstances" consumer harm and

19  deception case perfectly suited to resolution by a court. Second, this is a case about

20  the egregious conduct of a single company, as opposed to a case that presents policy

21

22  _____

23  [10] In their typical kitchen-sink approach, defendants do not even attempt to articulate
    the standard for establishing a violation of the dormant commerce clause, or explain if

24  that standard is met here. ECF 28 at 18. *See Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d
    628, 649 (6th Cir. 2010) (dormant clause not violated where Ohio's labeling rule's

25  intended benefit — consumer protection — outweighed the burdens on interstate

26  commerce). Similarly, defendants' safe harbor argument is without merit since
    plaintiffs seek disclosures regarding the health risks of caffeine consumption. ECF 28

27  at 19–20.

28

questions regarding an industry as a whole. This is a case involving particularized facts about particularized conduct by a particular cast of characters, which is, again, precisely the sort of matter best resolved by a court.

"'Every day courts decide whether conduct is misleading,'" and the "'reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *ConAgra*, 2012 WL 6569393, at *7 (quoting *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009), and *Delacruz v. CytoSport*, No. 11-3532 CW, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012)); *see also Chacanaca v. The Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (stating that plaintiffs advance a "relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle").

Third, it is not even clear which federal agency the defendants' feel should have primary jurisdiction over the case. The FDA[11] or the FTC? Defendants mischaracterize five paragraphs where the AC indirectly and peripherally references the FDA as a concession of the FDA's primary authority. ECF 28 at 17. Those paragraphs concede no such thing. ¶¶86, 90, 92, 113, 123. This case that involves consumer fairness and deception, safety, children, labeling and advertising encompassing a circumstance-specific inquiry that is obviously best suited to a court.

## E.   The UCL, FAL and CLRA Claims State a Claim for Relief.

### 1.   Plaintiffs Sufficiently Plead Reliance.

The reliance element of plaintiffs' UCL, FAL and CLRA causes of action are not subject to the heightened pleading requirement of Rule 9(b) because they are not

---

[11] As discussed above, the FDA and FDCA have no jurisdiction or expertise in the area of advertising claims.

solely grounded in fraud. Plaintiff need only allege he would have behaved differently if he had been aware of the undisclosed information. *Shin v. BMW of North America*, No. CV 09-00398 AHM (AJWx), 2009 WL 2163509, at *4 (C.D. Cal. July 16, 2009), (citing Cal. Bus. & Prof. Code §17204; Cal. Civ. Code §1780(a); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)); *see also Morey*, 2010 WL 2473314, at *2 ("At the pleading stage, however, a plaintiff is 'not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'").

Specifically, plaintiffs allege Monster has violated the California consumer protection statutes by, *inter alia*: (1) failing to warn consumers that Monster Drinks may increase blood pressure and/or heart rate of consumers, may cause nervousness, irritability and/or sleeplessness; (2) failing to disclose, or adequately disclose, the risks associated with the proprietary energy blend; (3) labeling and describing Monster Drinks in a manner as to appeal to children and youth, (4) promoting the stocking of Monster Drinks near sports drinks and comparing the hydration benefits to sports drinks; (5) failing to warn of the particular dangers inherent in consuming a highly caffeinated beverage containing other additives to form a proprietary energy blend; (6) labeling, advertising, marketing and promoting Monster Drinks as safe for consumption when they knew or had access to information that indicated those representations were false and misleading. *See* ¶¶172, 176–178, 187–188, 200–201.

Under a fraud theory, plaintiffs would be required to show "that the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset*, 51 Cal. 4th at 327 (citing *Tobacco II*, 46 Cal. 4th at 326). "[A] 'plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'" *Id.* (quoting *Tobacco II*, 46 Cal. 4th at 328). Reliance is understood to mean "reliance on a statement for its truth and accuracy." *Id.*, n.10. As the *Kwikset* court emphasized, "labels matter." *Id.* at 328. Deceptive labeling claims under the UCL, the FAL, and the CLRA are evaluated by whether a "reasonable

consumer" would likely be deceived. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008) (reversing denial of motion to dismiss) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). The California Supreme Court has recognized that "these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Generally, the question of whether a business practice is deceptive presents a question of fact not suitable for resolution on a motion to dismiss. *Id.*; *Bronson v. Johnson & Johnson, Inc.*, No. C 12–04184 CRB, 2013 WL 1629191, at *10 (N.D. Cal. Apr. 16, 2013).

Plaintiffs allege that they relied on the claims on the Monster Drink cans and the marketing and advertising of the drinks — specifically; they relied on Monster's omission of any warning that the drinks could be bad for their health or contain exceedingly high levels of caffeine. *See* ¶¶29, 31–32, 36–37. These allegations of reliance are more than sufficient under federal pleading standards. *See Shin*, 2009 WL 2163509, at *4; *Morey*, 2010 WL 2473314, at *2; *see also Rikos v. P&G*, 782 F. Supp. 2d 522, 535 (2011) ("Plaintiff alleges that all of the advertising statements carried the same message, which is sufficient to state a claim at [the pleading] stage.").

### 2. The AC Sufficiently Pleads the Failure to Warn Claim.

Plaintiffs' allegations support their claims that Monster failed to warn consumers of the risks associated with consumption of Monster Drinks. If "material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)); *see also Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971). The same rule applies to cases regarding omissions or failures to disclose as well. *See McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 184 (2010) (holding that because of defendant's failure to disclose information "which would have been material to any reasonable person who purchased" the product, a presumption of reliance was

justified); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293 (2002)
("[H]ere the record permits an inference of common reliance. Plaintiffs contend Mass.
Mutual failed to disclose its own concerns about the premiums it was paying and that
those concerns would have been material to any reasonable person contemplating the
purchase . . . ." If proved, that would "be sufficient to give rise to the inference of
common reliance on representations which were materially deficient.").

"A plaintiff may successfully pursue a CLRA claim [based on a fraudulent
omission] . . . if [the manufacturer] was obliged to disclose the potential for
problems." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007).
Such a duty exists if one of the following circumstances exists: "(1) when the
defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had
exclusive knowledge of material facts not known to the plaintiff; (3) when the
defendant actively conceals a material fact from the plaintiff; and (4) when the
defendant makes partial representations but also suppresses some material fact." *Id.* at
1095. "[A] duty to disclose may arise if a plaintiff alleges … 'safety concerns posed by
the defect.'" *Ho v. Toyota Motor Corp.*, No. 12-2672 SC, 2013 WL 1087846, at *7 (N.D.
Cal. Mar. 14, 2013) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th
824, 836 (2006)); *see also Falk*, 496 F. Supp. 2d 1088 (holding that a fact can give rise
to a duty to disclose and an actionable omission if it implicates safety concerns that a
reasonable consumer would find material). Because at least two of the four
circumstances exist here, Monster had a duty to disclose.

"A defendant has exclusive knowledge giving rise to a duty to disclose when
'according to the complaint, [defendant] knew of this defect while plaintiffs did not,
and, given the nature of the defect, it was difficult to discover.'" *Herron v. Best Buy Co.*,
No. 2:12-cv-02103-GEB-JFM, 2013 WL 595474, at *10 (E.D. Cal. Feb. 14, 2013)
(citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011)); *see also Falk*, 496 F.
Supp. 2d at 1096–97(finding exclusive knowledge because defendant had access to
significant data unavailable to the public about the defect, and because "customers

1  only became aware of the problem if they actually experienced it first-hand"); *Warner*

2  *Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970). "In order for non-disclosed

3  information to be material, a plaintiff must show that 'had the omitted information

4  been disclosed, one would have been aware of it and behaved differently.'" *Stanwood v.*

5  *Mary Kay, Inc.*, No. SACV-12-00312-CJC (ANx), 2012 WL 7991231, at *7 (C.D. Cal.

6  Sept. 20, 2012) (quoting *Falk*, 496 F. Supp. 2d at 1095).

7       Here, plaintiffs alleged that they did not know of the health risks associated

8  with consumption of Monster Drinks. *See* ¶¶29, 31–32, 36–37. No warning exists for

9  the teenagers and adolescents that Monster targets and the warnings for others are

10  inadequate. ¶¶89–90, 95–96. Monster Drinks have caused serious bodily injury to

11  consumers, and Monster fails to warn of that danger. *See* ¶¶115–128; Ex. B. The AC

12  sufficiently alleges that Monster had exclusive knowledge of facts — namely the

13  dangers associated with consumption — and failed to adequately disclose such

14  information. Plaintiffs allege that they would not have purchased the drinks had they

15  known the truth about the dangers associated with their consumption. *See* ¶¶29, 31–

16  32, 36–37. Plaintiffs have sufficiently shown that the non-disclosed information is

17  material because they would have been aware of it and behaved differently. *See Falk*,

18  496 F. Supp. 2d at 1095. Thus, the AC adequately alleges a failure to warn.

19       **F.**    **Plaintiffs Sufficiently Allege a Breach of Warranty Claim.**

20           **1.**      **Plaintiffs Adequately Pled Breach of Express Warranty.**

21       Plaintiffs have sufficiently pled that Monster breached its express warranty to

22  plaintiffs. To prevail on this claim, plaintiffs must prove: "(1) 'the seller's statements

23  constitute an affirmation of fact or promise or a description of the goods; (2) the

24  statement was part of the basis of the bargain; and (3) the warranty was breached.'"

25  *Brown v. Hain Celestial Group, Inc.*, No. C 11-03082 LB, 2012 WL 6697670, at *16 (N.D.

26  Cal. Dec. 22, 2012) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227

27  (2010)). Proof of reliance on specific promises is not required, and there is a

28  presumption that the affirmations go to the basis of the bargain. *Weinstat*, 180 Cal.

App. 4th at 1227. Furthermore, the focus should be on the "seller's behavior and obligation — his or her affirmations, promises, and descriptions of the goods." *Id.* at 1228.

Plaintiffs allege specific warranties made on the Monster Drink labels. Monster warrants, among other things, that the Monster Drinks are the "ideal combo of the right ingredients in the right proportion," that "bigger is better … because you can never get too much of a good thing," and that the Monster Drink "hydrates like a sports drink." ¶210. Monster also warrants that their "products are safe." ¶¶86, 91, 130. Plaintiffs also allege that Monster has failed to disclose material information — in particular, the dangers associated with consuming Monster Drinks. ¶¶222–229; *see In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW (MANx), 2011 U.S. Dist. LEXIS 40158, at *9 (C.D. Cal. Apr. 12, 2011) (applying breach of express warranty claim to nationwide class based on failure to disclose) (Mehdi Decl., Ex. 2).

Because plaintiffs have alleged both specific warranties made by Monster and a failure to disclose material information, they have more than plausibly alleged warranty claims. *See Brown*, 2012 WL 6697670, at *16 (denying defendant's motion to dismiss on breach of express warranty claims because plaintiffs plausibly alleged warranty claims). Therefore, whether Monster breached the alleged promises made to consumers is a question to be resolved by a jury. The same holds true for each of the state warranties plaintiffs allege that defendants have breached. *See* ¶214.[12] As the court found in *Brazilian Blowout*, breach of warranty claims should apply to the entire class where there is a duty to disclose. 2011 U.S. Dist. LEXIS 40158, at *9.

---

[12] Rule 10(b) does not require plaintiffs to identify which states laws apply to which individual plaintiff, but rather which laws apply to Monster's conduct. *See* F.R.Civ.P. 10(b) (numbered paragraphs must be limited to a "single set of circumstances").

### 2.     Plaintiffs Have Adequately Pled Breach of Implied Warranty.

Plaintiffs have sufficiently alleged a breach of implied warranty in the AC. *See* ¶¶213, 217–218, 222–230. "[W]here plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims." *Bronson*, 2013 WL 1629191, at * 12. The reason for this is that the implied warranty has multiple meanings and is not limited to whether the product is fit for its ordinary purpose; it also includes whether the product conforms "'to the promises or affirmations of fact made on the container or label.'" *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975)). Plaintiffs have brought their claims under that definition of merchantability, and have plausibly pled that the product does not conform to the container's promises or affirmations. *See* §III.F.1., *supra*. Moreover, their claims are not preempted. *See* §III.C., *supra*. Accordingly, dismissal of the implied warranty claims is inappropriate.

### G.     Plaintiffs Have Sufficiently Pled a Violation of the MMWA.

Defendants contend that plaintiffs have failed to allege individual amounts in controversy greater or equal to $25.00. ECF 28 at 24. Each of the plaintiffs allege they have been purchasing and consuming Monster Drinks over years. *See* ¶¶22–24. A single can of Monster Drink retails in the range of $2.00 and $4.00. All plaintiffs have alleged repeated consumption over the last five years and have adequately alleged individual amounts in controversy greater than $25.00. ¶¶29–37. Defendants' assertions that "the products at issue must cost more than $5," is also misplaced. ECF 28 at 24. This provision applies only to written warranties. 15 U.S.C. §2302(e). Plaintiffs have alleged breach of express and implied warranties under the MMWA and there is no price threshold for implied warranties under the MMWA. ¶235. Moreover, consumers can buy a 6-, 12- or 24- oz. can packs of Monster Drinks, which cost between $10.00 and $60.00.

1    Finally the express warranties made on the Monster Drinks — and notably the

2  failure to disclose material information — are not mere product descriptions. *Hairston*

3  *v. South Beach Beverage Co.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at **5–7

4  (C.D. Cal. May 18, 2012). Here, Monster expressly and impliedly promises that the

5  Monster Drinks are safe for consumption, and hence, defect free. This case is not like

6  *Hairston,* cited by defendants where the product description "all natural with vitamins"

7  was deemed not to constitute a promise that the product is defect free. Here, Monster

8  impliedly and expressly warrants that the Monster Drinks are safe for consumption

9  and at the same time omits the serious health risks associated with their consumption.

10  Monster is not describing the drinks in the warranties, it is promising they are safe, i.e.

11  defect free. Accordingly, Monster's omissions and express warranties on the labeling

12  and marketing meet the MMWA requirement of a written affirmation or promise that

13  the products are "defect free." Accordingly, at least at the pleading stage, plaintiffs'

14  MMWA claim survives dismissal.

15         **H.    Plaintiffs May Plead Unjust Enrichment in the Alternative.**

16    Plaintiffs are permitted to plead their claims in the alternative. F.R.Civ.P.

17  8(d)(2). Regardless whether unjust enrichment is an "independent cause of action" or

18  not, a party may plead in the alternative claims for restitution based on quasi-

19  contract/unjust enrichment. *ConAgra*, 2012 WL 6569393, at *13 (denying motion to

20  dismiss unjust enrichment because it was not a "standalone claim"); *Astiana v. Ben &*

21  *Jerry's Homemade, Inc.*, No. C 10–4387 PJH, 2011 WL 2111796, at *11 (N.D. Cal. May

22  26, 2011) (same).

23  **IV.   CONCLUSION**

24    For the foregoing reasons, motion to dismiss the AC should be denied. If the

25  Court regards portions of the AC that can be better pled, plaintiffs respectfully

26  request leave to amend, which should be "freely given." *See* F.R.Civ.P. 15(a).

27  Dated: May 15, 2013                    Respectfully submitted,

28                                          /s/Azra Z. Mehdi

1
2
3
4
5

The Mehdi Firm
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001(fax)
azram@themehdifirm.com

6
7
8
9
10
11
12
13
14
15

Clayton D. Halunen (admitted *phv*)
Susan M. Coler
Melissa W. Wolchansky
Halunen & Associates
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 605-4098
(612) 605-4099 (fax)
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

Attorneys for Plaintiffs

16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2013, I authorized the electronic filing of the following documents with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List:

1.  Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint;

2.  Plaintiffs' Opposition to Defendants' Request for Judicial Notice; and

3.  Declaration of Azra Z. Mehdi in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 15, 2013 at San Francisco, California.

/s/Azra Z/Mehdi
Azra Z. Mehdi

# Mailing Information for a Case 5:12-cv-02188-VAP-OP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Clayton D Halunen**
  halunen@halunenlaw.com

- **Dan E Marmalefsky**
  dmarmalefsky@mofo.com,jprice@mofo.com,skay@mofo.com

- **David F McDowell**
  dmcdowell@mofo.com

- **Azra Z Mehdi**
  azram@themehdifirm.com,ghamilton@themehdifirm.com

- **Purvi G Patel**
  ppatel@mofo.com,avargas@mofo.com,Docket-LA@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)