1                     UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                          WESTERN DIVISION

4                              - - -

5         HONORABLE VIRGINIA A. PHILLIPS, DISTRICT JUDGE PRESIDING

6

7       ALEC FISHER,                    )
                                        )
8              Plaintiff,               )
                                        )
9                                       )
                                        )
10             vs.                      ) No. EDCV 12-02188-VAP
                                        )
11                                      )
                                        )
12      MONSTER BEVERAGE CORPORATION,   )
        MONSTER ENERGY COMPANY, ET      )
13      AL.,                            )
                                        )
14             Defendants.

15      _____

16

17                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                  *DEFENDANTS' MOTION TO DISMISS*

19                    LOS ANGELES, CALIFORNIA

20                    FRIDAY, JUNE 21, 2013

21      _____

22                       MARIA R. BUSTILLOS
                       OFFICIAL COURT REPORTER
23                         C.S.R. 12254
                       UNITED STATES COURTHOUSE
24                     312 NORTH SPRING STREET
                             ROOM 404
25                  LOS ANGELES, CALIFORNIA 90012
                          (213) 894-2739

1                **A P P E A R A N C E S**

2

3

4     **ON BEHALF OF THE PLAINTIFFS,**
    **ALEC FISHER:**                 THE MEHDI FIRM

5                             BY:  AZRA MEHDI, ESQ.
                            ONE MARKET

6                             SPEAR TOWER
                            SUITE 3600

7                             SAN FRANCISCO, CA 94105
                            (415)216-6358

8

9                             HALUNEN & ASSOCIATES

10                           BY:  MELISSA WEINER
                            WOLCHANSKY

11                           1650 IDS CENTER
                            80 SOUTH EIGHT STREET

12                           MINNEAPOLIS, MN 55402
                            (612)605-4098

13

14     **ON BEHALF OF THE DEFENDANTS,**
    **MONSTER BEVERAGE**         MORRISON FOERSTER

15     **CORPORATION, MONSTER ENERGY**   BY:  DAN MARMALEFSKY, ESQ.
    **COMPANY, ET AL.:**           707 WILSHIRE BOULEVARD

16                           LOS ANGELES, CA 90017
                            (213)892-5809

17

18                           MORRISON FOERSTER

19                           BY:  PURVI G. PATEL
                          707 WILSHIRE BOULEVARD

20                           LOS ANGELES, CA 90017
                            (213)892-5296

21

22

23

24

25

**I N D E X**

                                                          PAGE

DEFENDANTS' MOTION TO DISMISS:                              4

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JUNE 21, 2013

 2                              -o0o-

 3              (COURT IN SESSION AT 9:47 A.M.)

 4         THE CLERK:  Calling item one, EDCV CV 12-02188-VAP:

 5    Alec Fisher, et al. v. Monster Beverage Corporation, et al.

 6         Counsel, please state your appearance.

 7         MS. MEHDI:  Good morning, Your Honor.

 8    Azra Mehdi for plaintiffs.  With me is Melissa Wolchansky of

 9    Halunen & Associates.  Ms. Wolchansky is not currently

10    admitted.  But we expect to file her pro hac vice papers; but

11    I will be addressing the Court, Your Honor.

12         THE COURT:  All right.  Good morning.

13         MR. MARMALEFSKY:  Good morning, Your Honor.

14    Dan Marmalefsky and Purvi Patel on behalf of defendants.

15         MS. PATEL:  Good morning.

16         THE COURT:  Good morning.

17         All right.  Both sides have had a chance to review

18    the Court's tentative ruling?

19         MS. MEHDI:  Yes, we have, Your Honor.

20         MR. MARMALEFSKY:  Yes, Your Honor.

21         THE COURT:  All right.  Is there anything you wish

22    to address in the tentative?  And in particular, I know there

23    are many issues here.  So in particular, let me suggest that

24    you probably want to address the standing issue.  And it

25    seems to me that one of the problems that I don't see how
```

```
 1   leave to amend could remedy the state of the complaint, is as
 2   to the nature of the representations that are alleged -- and
 3   we went through them in detail near the end of the tentative
 4   ruling.  I think each and every one of them are -- it's hard
 5   to imagine anything that could be better described as puffery
 6   than most of what you've alleged here as the basis for
 7   your -- your claims.  I mean, to say that a statement that
 8   the beverage delivers a big bad buzz could contain an
 9   affirmation of facts, really boggles the mind.  So -- and the
10   same thing is true for the -- the statements that, you know,
11   customers are going to dig these drinks; that there was a,
12   you know, a poolside Vegas party, rehab pool party, all of
13   those types of representations are so far from being
14   actionable that I just -- I really question whether leave to
15   amend is even appropriate.  So I would suggest that those
16   would be the best areas to focus upon.
17              MS. MEHDI:  Thank you, Your Honor.  I'll start with
18   standing.  I think the Court found that our plaintiffs, at
19   least two of them, don't allege any physical injury which is
20   partly the basis of the finding that there's no Article III
21   standing --
22              THE COURT:  Well, that's not precisely -- that's
23   not really the holding that I made here.  It's that their
24   injury is conjectural.
25              MS. MEHDI:  Well, Your Honor, I'm just looking at
```

```
 1     the part where it says, Plaintiffs Fisher and Rucks do not
 2     allege any physical injury --
 3               THE COURT:  Okay.  You need to slow down.
 4               MS. MEHDI:  -- okay -- rather they believe that the
 5     Monster drinks were safe for consumption and the -- the fact,
 6     had they known that Monster drinks could be bad for their
 7     health, they wouldn't have continued to purchase and consume.
 8     The Court found that these allegations were insufficient for
 9     Article III standing.
10               Your Honor, we -- we have in our opposition papers
11     outlined why economic injury of the kind alleged by the
12     plaintiffs is sufficient for purposes of Article III
13     standing.  And --
14               THE COURT:  Well, what's the economic injury here?
15     You're not claiming that they overpaid.
16               MS. MEHDI:  We are claiming that they paid a
17     premium for the drinks.  And -- and because those drinks,
18     unlike sports drinks, are -- are more expensive.  And we'd be
19     happy to -- the Court asked whether leave to amend would be
20     appropriate.  That would be one place where we could list out
21     the prices of various drinks so that the Court may see why
22     those drinks are more expensive than other -- than sports
23     drinks which Monster claims that they are similar to.  In
24     fact, Monster's CEO and Rodney Sacks and president Hall have
25     actually called Monster energy drinks the new soft drinks.
```

1    And so I think that we can try to demonstrate that the price

2    differential between Monster energy drinks and the sports

3    drinks is different and they are not the new soft drinks;

4    that there are aspects of Monster Energy drink that are very

5    harmful.  In any event, that's what we would do.

6            The other aspect that I wanted to address -- well,

7    let me -- you said the nature of representations, you find

8    them really not to be misleading.

9            THE COURT:  No, that's not what I stated.  So

10   that -- their classic puffery.  They don't contain a

11   statement of fact or a promise.

12           MS. MEHDI:  Right.  An actual puffery.

13           And plaintiffs don't agree with that

14   characterization because, you know, you cannot look at those

15   statements in a vacuum.  You have to look at those statements

16   in the context of advertising -- all of the advertising; not

17   just the label on the can.  And I will get to the point about

18   the labeling in just one minute.  I want to address the

19   Court's concerns first.

20           Marketing to nine-year-olds and to 12-year olds and

21   13-year olds and saying that you will get a big buzz, that --

22   that is not just -- that is not inactionable puffery because

23   it is sending a message.  It's communicating the message that

24   this is not alcohol, but it's like alcohol.  Saying that

25   Monster Energy drinks are the ideal combination of the right

1    ingredients and right proportion does -- it is actionable

2    because it is an affirmation of fact.  It's saying if you

3    drink this, it's perfect for you.  That is an affirmation of

4    fact and that is a warranty.  That's an express warranty.

5    And so we believe that those are actionable.  They're not

6    inactionable puffery.  Saying that a Monster Energy drink

7    hydrates like a sports drink, that after a night of partying

8    in Vegas -- Your Honor, I don't know if you've been to Vegas,

9    but when you go to Vegas, the idea is that you drink and

10   you -- everything is in excess, and you spend all night doing

11   that.  And then if you drink a Monster Energy drink, you're

12   like brand new.

13          So the Court's parsing of the various

14   representations as inactionable puffery in a vacuum, we say

15   might do disservice to those affirmations of fact and

16   representations that Monster Energy is putting out.

17          We'd be happy to take each one of the ones that the

18   Court has put in its tentative, if it so chooses to issue it

19   as its final ruling and amend the complaint to demonstrate

20   why they're not inactionable puffery.

21          And then I wanted to address a couple of things.

22   One is, the Court in the section on failure to allege with

23   particularity, one of the things that the Court found was

24   that plaintiffs' allegations of injury based on 20 different

25   varieties when they specifically alleged only purchase of

```
 1    eight varieties, is not specific enough.  We'd be happy to
 2    put in a check mark against each variety that the plaintiffs
 3    bought, but the law doesn't require that.  It requires that
 4    where products are substantially similar, that if you have
 5    bought a number of them and there's not much difference in
 6    the -- in the other products that are being consumed, that
 7    the plaintiff has standing to represent other people who have
 8    consumed those other varieties.  And for that, I would
 9    advance the cases of *Ostiano v. Dreyer* and the *Jamba Juice*
10    case.
11          And then finally, I wanted to addresses the
12    Court's -- the finding that FDA's food label warnings do not
13    impose the type of -- do not impose requirements for posting
14    the type of warnings that plaintiffs are requesting.
15          Respectfully, Your Honor, the complaint alleges
16    that the FDA hasn't done a premarket review of these dietary
17    supplements.  And, in fact, the FDA when it does focus --
18    when it did does review under 343Q, it reviews individual
19    ingredients.  It's not a product-specific analysis.  In fact,
20    as outlined in our opposition brief, the Food, Drug and
21    Cosmetics Act is not focused on truth or falsity of
22    advertising claims.  So the requirements of what is adequate
23    to -- adequate warning is not really something that the FDA
24    regulates.  That's within the state's ambit and that's
25    something that the states regulate.  And I will concede that
```

1    we're not trying to enforce, you know, federal regulations.

2    We are not trying to enforce the FDCA or the NLEA.  We have

3    alleged that in the totality, defendant's conduct -- it's the

4    conduct in -- in designing a product specifically to reach to

5    young males, designing a marketing strategy, specifically to

6    reach to the youth.  And we've attached an internal marketing

7    document that demonstrates that Monster intends and reaches

8    out to young kids.  That is what is what is within the

9    State's rights.  That is what States regulate; not the FDA.

10   In fact, there is so much scrutiny on them right now because

11   the FDA hasn't done enough.  So those are my arguments.

12        And I think because a number of the remaining

13   arguments on UCL, FAL rely on its threshold rulings,

14   Your Honor.  We're happy to amend --

15        THE COURT:  Well, one of the concerns I have in

16   listening to you this morning is, it sounds like if given

17   leave to amend, you only envision adding to the complaint.

18   One of the other bases for my ruling is that the -- is to

19   grant the motion on the basis that it offends Rule 8.  This

20   is probably the most prolix complaint I have ever seen and

21   has more irrelevant, inflammatory, extraneous allegations,

22   including allegations that some reports indicate that the

23   claw logo ranks close behind the boogie man or Frankenstein.

24   I mean, I don't know what those reports are.  And I don't

25   know what it means to say that a logo ranks close behind the

1    boogie man.  But that doesn't -- that doesn't belong in a

2    complaint.  You say that the complaint alleges that there are

3    some reports that the drink has been associated with high

4    risk behavior, including everything from marijuana use,

5    sexual risk-taking, fighting, failure to use seat belts and

6    taking risks on a dare.  This does not belong in a complaint.

7    And that's not even the end of that list.

8            I mean, this is not -- a complaint should not be

9    confused with a press release.  If you want to do a press

10   release, do a press release.  But this is not a short-claim

11   statement of the facts upon which you're seeking relief.

12           All right.  Do you wish to respond to the arguments

13   with respect to puffery and standing, Mr. Marmalefsky?

14           MR. MARMALEFSKY:  Very briefly, Your Honor.

15           First of all, with respect to standing in the

16   statements made by counsel right now about Rodney Sacks or

17   Mr. Hall making various statements, I mean, there are no

18   allegations that any of these plaintiffs heard those

19   statements; allegations about sports drinks and whether a

20   Monster Energy drink hydrates like a sports drink.  I mean, a

21   sports drink first of all, isn't a defined term; but again,

22   they're talking about 28 different varieties.  The phrase

23   "hydrates like a sports drink" is not on all 28 cans.  It's

24   on a couple of cans.  They're talking about marketing to

25   9-year-olds and the evil about that; but, you know, none of

1    the plaintiffs are nine-year-olds.  The plaintiffs aren't

2    talking about any marketing specific to them.  When you go to

3    the cases that we relied on which the Court appears to have

4    based its decision on with regard to standing, the issue is

5    whether or not there is a cognizable actual injury.  That

6    something could be bad for someone's health is sort of the

7    ultimate conjectural phrase.  In contrast, the cases that

8    find economic injury or where there is an affirmative

9    representation in that representation, is false.  So, for

10   example, the *Quickset* case when someone purchases something

11   that says "Made in the USA," and they say, I'm going to pay

12   extra for this because it's made in the United States; I want

13   to support American companies, there you have a statement

14   that someone relied on to their detriment that caused an

15   economic injury.  There is no statement here that the

16   plaintiffs have alleged or could allege that they were

17   relying on to their detriment.  There is no evidence here of

18   paying a premium price.  A person purchased an energy drink.

19   And there's no evidence that an energy drink manufactured by

20   Monster has one price point and an energy drink manufactured

21   by another manufacturer has another price point.

22          I want to comment briefly on the -- what counsel

23   said about the absence of a premarket review and the fact

24   that the companies can decide to market their products if

25   they've determined that they are generally recognized as

1    safe.  And I agree with Your Honor when you say that any

2    issue relating to food safety and food labeling is clearly

3    preempted.

4              I would add to that, one of the additional

5    preemption grounds that we had cited in which the Court

6    references but doesn't discuss any opinion as primary

7    jurisdiction.  Food safety and food labeling is something

8    that is sort of at the core of what the FDA does, and as

9    counsel just deluded to, the FDA is all over the issue of

10   caffeine and food and dietary supplements these days.  They

11   have responded to congressional inquiries by saying that, We

12   are conducting an ongoing study of the safety of caffeine in

13   food and dietary supplements; that we are going to ask the

14   Institute of Medicine to conduct a workshop to evaluate

15   whether or not there is any risk to vulnerable populations.

16   And I recognize that the Court in its tentative has said it

17   was unnecessary to look at the documents which we asked the

18   Court to take judicial notice; but I would ask the Court to

19   reconsider that because they show that, in fact, the FDA

20   today is looking at the very issues that plaintiff is asking

21   this Court to examine and to substitute its judgment for the

22   judgment of the federal agency that's entrusted with

23   responsibility for food safety and labeling.  And because of

24   the primary jurisdiction doctrine, I think the appropriate

25   action on the motion to dismiss is not to grant leave to

1   amend to this -- at this point.  The Court is never going to

2   determine that a 140 milligrams is safe but 180 is not.  I

3   mean, those are determinations that are peculiarly within the

4   expertise of the Food and Drug Administration.

5           Similarly, whether or not there has to be a warning

6   beyond the warning that is on all Monster cans about not

7   recommending consumption by children, pregnant or nursing

8   women or those who are sensitive to caffeine, whether there

9   should be an additional caution for people with heart

10  conditions or something of the like.  You know, that's not a

11  determination that would normally be made by a Court.  That

12  is something that is entrusted by Congress to the FDA, and

13  the FDA has required warnings where after its own scientific

14  study, it is determined that warnings are appropriate.  And

15  as the FDA has said in public statements within the last

16  year, they are evaluating whether or not, there should be any

17  additional labeling or warnings required of any food to which

18  caffeine is added.

19          And so I would ask the Court to consider

20  supplementing the tentative by addressing the primary

21  jurisdiction argument.

22          And finally, to the extent that there is going to

23  be an amendment, the Court mentions in discussing the

24  *Pom Wonderful* case that it only addressed preemption with

25  respect to the Lanham Act.  That is correct with regard to

1    the Ninth Circuit decision.  They didn't reach the state law

2    grounds that were articulated in the complaint because the

3    District Court had not done so.  As we point out in our

4    briefs on remand, Judge Otero did, in fact, find that the

5    state law claims just like the Lanham Act claim were

6    preempted for the very same reasons that a state law cannot

7    impose a requirement that is different from what federal law

8    imposes.  And if it's a requirement imposed by federal law,

9    then it's preempted.  So I would ask the Court to perhaps

10   take another look at that.

11              THE COURT:  All right.

12              MR. MARMALEFSKY:  Thank you.

13              THE COURT:  Do you wish to respond?

14              MS. MEHDI:  Your Honor, I just have one additional

15   thing to add to what I said based on counsel's argument.

16              On the standing issue, counsel mentioned that

17   plaintiffs are not nine-year-olds.  Yes, they're not

18   nine-year-olds.  Yes, they're not 9-year-olds today; but they

19   were only 16, at least two of them were, when Monster handed

20   out free cans without asking how old they were.

21              Also, the nine-year-old reference is not my

22   document.  It's Monster's document.  They were targeting

23   trophy kids.  So the fact that all of my plaintiffs are not

24   nine-year-old's is not the end of the inquiry, because the

25   question really is beyond that.  The question is about

1    marketing and the advertising conduct that's at issue in our

2    complaint.  And the fact that the warning on the label -- on

3    the can has nothing addressed at youth.

4              Thank you, Your Honor.

5              THE COURT:  All right.  Thank you.  I'll take the

6    matter under submission.  You can return your copies of the

7    tentative to the clerk.

8              (Whereupon proceedings are adjourned.)

9                            - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5     ALEC FISHER                          :

 6                vs.                       :   No. CV 12-02188-VAP

 7     MONSTER BEVERAGE CORPORATION,        :

 8     MONSTER ENERGY COMPANY, ET AL.

 9

10

11   I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

12   UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

13   CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

14   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

15   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

16   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

17   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

18   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

19   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

20   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

21   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

22

23   /S/_____        __08/21/2013__

24   MARIA R. BUSTILLOS                    DATE
     OFFICIAL REPORTER
25
```

18

**/**

/S [1] - 17:23

**0**

08/21/2013 [1] - 17:23

**1**

12-02188-VAP [3] - 1:10, 4:4, 17:6
12-year [1] - 7:20
12254 [1] - 1:23
13-year [1] - 7:21
140 [1] - 14:2
16 [1] - 15:19
1650 [1] - 2:10
180 [1] - 14:2

**2**

20 [1] - 8:24
2013 [2] - 1:19, 4:1
21 [2] - 1:19, 4:1
213 [1] - 1:25
213)892-5296 [1] - 2:20
213)892-5809 [1] - 2:16
28 [3] - 11:22, 11:23, 17:14

**3**

312 [1] - 1:24
343Q [1] - 9:18
3600 [1] - 2:6

**4**

4 [1] - 3:4
404 [1] - 1:24
415)216-6358 [1] - 2:7

**5**

55402 [1] - 2:11

**6**

612)605-4098 [1] - 2:12

**7**

707 [2] - 2:15, 2:19
753 [1] - 17:13

**8**

8 [1] - 10:19
80 [1] - 2:11
894-2739 [1] - 1:25

**9**

9-year-olds [2] - 11:25, 15:18
90012 [1] - 1:25
90017 [2] - 2:16, 2:19
94105 [1] - 2:7
9:47 [1] - 4:3

**A**

A.M [1] - 4:3
ABOVE [1] - 17:16
ABOVE-ENTITLED [1] - 17:16
absence [1] - 12:23
Act [3] - 9:21, 14:25, 15:5
action [1] - 13:25
actionable [3] - 5:14, 8:1, 8:5
actual [2] - 7:12, 12:5
add [2] - 13:4, 15:15
added [1] - 14:18
adding [1] - 10:17
additional [4] - 13:4, 14:9, 14:17, 15:14
address [5] - 4:22, 4:24, 7:6, 7:18, 8:21
addressed [2] - 14:24, 16:3
addresses [1] - 9:11
addressing [2] - 4:11, 14:20
adequate [2] - 9:22, 9:23
adjourned [1] - 16:8
Administration [1] - 14:4
admitted [1] - 4:10
advance [1] - 9:9
advertising [4] - 7:16, 9:22, 16:1
affirmation [1] - 5:9, 8:2, 8:3
affirmations [1] - 8:15
agency [1] - 13:22
agree [2] - 7:13, 13:1
al [2] - 4:5
AL [3] - 1:13, 2:15, 17:8
alcohol [2] - 7:24
ALEC [3] - 1:7, 2:4, 17:5
Alec [1] - 4:5
allegations [6] - 6:8, 8:24, 10:21, 10:22,

11:18, 11:19
allege [4] - 5:19, 6:2, 8:22, 12:16
alleged [6] - 5:2, 5:6, 6:11, 8:25, 10:3, 12:16
alleges [2] - 9:15, 11:2
ambit [1] - 9:24
amend [7] - 5:1, 5:15, 6:19, 8:19, 10:14, 10:17, 14:1
amendment [1] - 14:23
American [1] - 12:13
analysis [1] - 9:19
AND [3] - 17:11, 17:14, 17:16
AND/OR [1] - 17:20
ANGELES [5] - 1:18, 1:25, 2:16, 2:19, 4:1
ANY [1] - 17:19
appearance [1] - 4:6
appropriate [4] - 5:15, 6:20, 13:24, 14:14
ARE [1] - 17:20
areas [1] - 5:16
argument [2] - 14:21, 15:15
arguments [3] - 10:11, 10:13, 11:12
Article [3] - 5:20, 6:9, 6:12
articulated [1] - 15:2
aspect [1] - 7:6
aspects [1] - 7:4
associated [1] - 11:3
Associates [1] - 4:9
ASSOCIATES [1] - 2:9
AT [1] - 4:3
attached [1] - 10:6
Azra [1] - 4:8
AZRA [1] - 2:5

**B**

bad [3] - 5:8, 6:6, 12:6
based [3] - 8:24, 12:4, 15:15
bases [1] - 10:18
basis [3] - 5:6, 5:20, 10:19
BEHALF [2] - 2:4, 2:14
behalf [1] - 4:14
behavior [1] - 11:4
behind [2] - 10:23, 10:25
belong [2] - 11:1, 11:6
belts [1] - 11:5
best [1] - 5:16
better [1] - 5:5
between [1] - 7:2
beverage [1] - 5:8
Beverage [1] - 4:5
BEVERAGE [3] - 1:12, 2:14, 17:7

beyond [2] - 14:6, 15:25
big [2] - 5:8, 7:21
boggles [1] - 5:9
boogie [2] - 10:23, 11:1
bought [2] - 9:3, 9:5
BOULEVARD [2] - 2:15, 2:19
brand [1] - 8:12
brief [1] - 9:20
briefly [2] - 11:14, 12:22
briefs [1] - 15:4
BUSTILLOS [3] - 1:22, 17:11, 17:24
buzz [2] - 5:8, 7:21
BY [4] - 2:5, 2:9, 2:15, 2:18

**C**

C.S.R [1] - 1:23
CA [3] - 2:7, 2:16, 2:19
caffeine [4] - 13:10, 13:12, 14:8, 14:18
CALIFORNIA [5] - 1:2, 1:18, 1:25, 4:1, 17:13
cannot [2] - 7:14, 15:6
cans [4] - 11:23, 11:24, 14:6, 15:20
case [3] - 9:10, 12:10, 14:24
cases [3] - 9:9, 12:3, 12:7
caused [1] - 12:14
caution [1] - 14:9
CENTER [1] - 2:10
CENTRAL [2] - 1:2, 17:12
CEO [1] - 6:24
CERTIFY [1] - 17:13
chance [1] - 4:17
characterization [1] - 7:14
CHARGED [1] - 17:19
check [1] - 9:2
children [1] - 14:7
chooses [1] - 8:18
Circuit [1] - 15:1
CIRCUIT [1] - 17:19
cited [1] - 13:5
claim [2] - 11:10, 15:5
claiming [2] - 6:15, 6:16
claims [4] - 5:7, 6:23, 9:22, 15:5
classic [1] - 7:10
claw [1] - 10:23
clearly [1] - 13:2
CLERK [1] - 4:4
clerk [1] - 16:7
close [2] - 10:23, 10:25

CODE [1] - 17:14
cognizable [1] - 12:5
combination [1] - 7:25
comment [1] - 12:22
communicating [1] - 7:23
companies [2] - 12:13, 12:24
COMPANY [3] - 1:12, 2:15, 17:8
complaint [11] - 5:1, 8:19, 9:15, 10:17, 10:20, 11:2, 11:6, 11:8, 15:2, 16:2
concede [1] - 9:25
concerns [2] - 7:19, 10:15
conditions [1] - 14:10
conduct [4] - 10:3, 10:4, 13:14, 16:1
conducting [1] - 13:12
CONFERENCE [2] - 17:18, 17:21
CONFORMANCE [2] - 17:17, 17:20
confused [1] - 11:9
Congress [1] - 14:12
congressional [1] - 13:11
conjectural [2] - 5:24, 12:7
consider [1] - 14:19
consume [1] - 6:7
consumed [2] - 9:6, 9:8
consumption [2] - 6:5, 14:7
contain [2] - 5:8, 7:10
context [1] - 7:16
continued [1] - 6:7
contrast [1] - 12:7
copies [1] - 16:6
core [1] - 13:8
Corporation [1] - 4:5
CORPORATION [3] - 1:12, 2:15, 17:7
CORRECT [1] - 17:15
correct [1] - 14:25
Cosmetics [1] - 9:21
counsel [5] - 4:6, 11:16, 12:22, 13:9, 15:16
counsel's [1] - 15:15
couple [2] - 8:21, 11:24
COURT [16] - 1:1, 1:22, 4:3, 4:12, 4:16, 4:21, 5:22, 6:3, 6:14, 7:9, 10:15, 15:11, 15:13, 16:5, 17:11, 17:12
Court [20] - 4:11, 5:18, 6:8, 6:19, 6:21, 8:18, 8:22, 8:23, 12:3, 13:5, 13:16, 13:18,

13:21, 14:1, 14:11,
14:19, 14:23, 15:3,
15:9
**Court's** [4] - 4:18,
7:19, 8:13, 9:12
**COURTHOUSE** [1] -
1:23
**customers** [1] - 5:11
**CV** [2] - 4:4, 17:6

**D**

**Dan** [1] - 4:14
**DAN** [1] - 2:15
**dare** [1] - 11:6
**DATE** [1] - 17:24
**days** [1] - 13:10
**decide** [1] - 12:24
**decision** [2] - 12:4,
15:1
**defendant's** [1] - 10:3
**defendants** [1] - 4:14
**DEFENDANTS** [1] -
2:14
**Defendants** [1] - 1:14
**DEFENDANTS'** [2] -
1:17, 3:4
**defined** [1] - 11:21
**delivers** [1] - 5:8
**deluded** [1] - 13:9
**demonstrate** [2] - 7:1,
8:19
**demonstrates** [1] -
10:7
**DEPOSIT** [1] - 17:20
**described** [1] - 5:5
**designing** [2] - 10:4,
10:5
**detail** [1] - 5:3
**determination** [1] -
14:11
**determinations** [1] -
14:3
**determine** [1] - 14:2
**determined** [2] -
12:25, 14:14
**detriment** [2] - 12:14,
12:17
**dietary** [3] - 9:16,
13:10, 13:13
**difference** [1] - 9:5
**different** [4] - 7:3,
8:24, 11:22, 15:7
**differential** [1] - 7:2
**dig** [1] - 5:11
**discuss** [1] - 13:6
**discussing** [1] - 14:23
**DISMISS** [2] - 1:17,
3:4
**dismiss** [1] - 13:25
**disservice** [1] - 8:15
**DISTRICT** [5] - 1:1,
1:2, 1:5, 17:12
**District** [1] - 15:3
**DIVISION** [1] - 1:3

**DO** [1] - 17:13
**doctrine** [1] - 13:24
**document** [3] - 10:7,
15:22
**documents** [1] - 13:17
**done** [3] - 9:16, 10:11,
15:3
**down** [1] - 6:3
**Dreyer** [1] - 9:9
**drink** [15] - 7:4, 8:3,
8:6, 8:7, 8:9, 8:11,
11:3, 11:20, 11:21,
11:23, 12:18, 12:19,
12:20
**drinks** [16] - 6:1, 6:5,
6:6, 6:17, 6:18, 6:21,
6:22, 6:23, 6:25, 7:2,
7:3, 7:25, 11:19
**Drug** [2] - 9:20, 14:4

**E**

**economic** [4] - 6:11,
6:14, 12:8, 12:15
**EDCV** [2] - 1:10, 4:4
**EIGHT** [1] - 2:11
**eight** [1] - 9:1
**end** [3] - 5:3, 11:7,
15:24
**energy** [5] - 6:25, 7:2,
12:18, 12:19, 12:20
**ENERGY** [3] - 1:12,
2:15, 17:8
**Energy** [6] - 7:4, 7:25,
8:6, 8:11, 8:16,
11:20
**enforce** [2] - 10:1,
10:2
**ENTITLED** [1] - 17:16
**entrusted** [2] - 13:22,
14:12
**envision** [1] - 10:17
**ESQ** [2] - 2:5, 2:15
**ET** [3] - 1:12, 2:15,
17:8
**et** [2] - 4:5
**evaluate** [1] - 13:14
**evaluating** [1] - 14:16
**event** [1] - 7:5
**evidence** [2] - 12:17,
12:19
**evil** [1] - 11:25
**examine** [1] - 13:21
**example** [1] - 12:10
**excess** [1] - 8:10
**expect** [1] - 4:10
**expensive** [2] - 6:18,
6:22
**expertise** [1] - 14:4
**express** [1] - 8:4
**extent** [1] - 14:22
**extra** [1] - 12:12
**extraneous** [1] - 10:21

**F**

**fact** [14] - 6:5, 6:24,
7:11, 8:2, 8:4, 8:15,
9:17, 9:19, 10:10,
12:23, 13:19, 15:4,
15:23, 16:2
**facts** [2] - 5:9, 11:11
**failure** [1] - 8:22, 11:5
**FAL** [1] - 10:13
**false** [1] - 12:9
**falsity** [1] - 9:21
**far** [1] - 5:13
**FDA** [11] - 9:16, 9:17,
9:23, 10:9, 10:11,
13:8, 13:9, 13:19,
14:12, 14:13, 14:15
**FDA's** [1] - 9:12
**FDCA** [1] - 10:2
**federal** [4] - 10:1,
13:22, 15:7, 15:8
**FEE** [1] - 17:19
**FEES** [1] - 17:19
**fighting** [1] - 11:5
**file** [1] - 4:10
**final** [1] - 8:19
**finally** [2] - 9:11, 14:22
**FIRM** [1] - 2:4
**first** [3] - 7:19, 11:15,
11:21
**Fisher** [2] - 4:5, 6:1
**FISHER** [3] - 1:7, 2:4,
17:5
**focus** [2] - 5:16, 9:17
**focused** [1] - 9:21
**FOERSTER** [2] - 2:14,
2:18
**food** [9] - 9:12, 13:2,
13:7, 13:10, 13:13,
13:23, 14:17
**Food** [2] - 9:20, 14:4
**FOR** [3] - 17:11,
17:12, 17:19
**FOREGOING** [1] -
17:14
**FORMAT** [1] - 17:17
**FRANCISCO** [1] - 2:7
**Frankenstein** [1] -
10:23
**free** [1] - 15:20
**FRIDAY** [2] - 1:19, 4:1

**G**

**generally** [1] - 12:25
**given** [1] - 10:16
**grant** [2] - 10:19,
13:25
**grounds** [2] - 13:5,
15:2

**H**

**hac** [1] - 4:10
**Hall** [2] - 6:24, 11:17
**HALUNEN** [1] - 2:9
**Halunen** [1] - 4:9
**handed** [1] - 15:19
**happy** [4] - 6:19, 8:17,
9:1, 10:14
**hard** [1] - 5:4
**harmful** [1] - 7:5
**health** [2] - 6:7, 12:6
**heard** [1] - 11:18
**heart** [1] - 14:9
**HELD** [1] - 17:16
**HEREBY** [1] - 17:13
**high** [1] - 11:3
**holding** [1] - 5:23
**Honor** [15] - 4:7, 4:11,
4:13, 4:19, 4:20,
5:17, 5:25, 6:10, 8:8,
9:15, 10:14, 11:14,
13:1, 15:14, 16:4
**HONORABLE** [1] - 1:5
**hydrates** [3] - 8:7,
11:20, 11:23

**I**

**idea** [1] - 8:9
**ideal** [1] - 7:25
**IDS** [1] - 2:10
**III** [3] - 5:20, 6:9, 6:12
**imagine** [1] - 5:5
**impose** [2] - 9:13,
15:7
**imposed** [1] - 15:8
**imposes** [1] - 15:8
**IN** [5] - 4:3, 17:11,
17:16, 17:17, 17:20
**inactionable** [4] -
7:22, 8:6, 8:14, 8:20
**including** [2] - 10:22,
11:4
**indicate** [1] - 10:22
**individual** [1] - 9:18
**inflammatory** [1] -
10:21
**ingredients** [2] - 8:1,
9:19
**injury** [9] - 5:19, 5:24,
6:2, 6:11, 6:14, 8:24,
12:5, 12:8, 12:15
**inquiries** [1] - 13:11
**inquiry** [1] - 15:24
**Institute** [1] - 13:14
**insufficient** [1] - 6:8
**intends** [1] - 10:7
**internal** [1] - 10:6
**irrelevant** [1] - 10:21
**IS** [2] - 17:14, 17:17
**issue** [7] - 4:24, 8:18,
12:4, 13:2, 13:9,
15:16, 16:1

**issues** [2] - 4:23,
13:20
**item** [1] - 4:4

**J**

**Jamba** [1] - 9:9
**Judge** [1] - 15:4
**JUDGE** [1] - 1:5
**judgment** [2] - 13:21,
13:22
**judicial** [1] - 13:18
**JUDICIAL** [2] - 17:18,
17:21
**Juice** [1] - 9:9
**JUNE** [2] - 1:19, 4:1
**jurisdiction** [3] - 13:7,
13:24, 14:21

**K**

**kids** [2] - 10:8, 15:23
**kind** [1] - 6:11
**known** [1] - 6:6

**L**

**label** [3] - 7:17, 9:12,
16:2
**labeling** [5] - 7:18,
13:2, 13:7, 13:23,
14:17
**Lanham** [2] - 14:25,
15:5
**last** [1] - 14:15
**law** [6] - 9:3, 15:1,
15:5, 15:6, 15:7,
15:8
**least** [2] - 5:19, 15:19
**leave** [5] - 5:1, 5:14,
6:19, 10:17, 13:25
**LESS** [1] - 17:19
**list** [2] - 6:20, 11:7
**listening** [1] - 10:16
**logo** [2] - 10:23, 10:25
**look** [4] - 7:14, 7:15,
13:17, 15:10
**looking** [2] - 5:25,
13:20
**LOS** [5] - 1:18, 1:25,
2:16, 2:19, 4:1

**M**

**males** [1] - 10:5
**man** [2] - 10:23, 11:1
**manufactured** [2] -
12:19, 12:20
**manufacturer** [1] -
12:21
**MARIA** [3] - 1:22,
17:11, 17:24
**marijuana** [1] - 11:4

**mark** [1] - 9:2
**market** [1] - 12:24
**MARKET** [1] - 2:5
**marketing** [6] - 7:20, 10:5, 10:6, 11:24, 12:2, 16:1
**Marmalefsky** [2] - 4:14, 11:13
**MARMALEFSKY** [5] - 2:15, 4:13, 4:20, 11:14, 15:12
**matter** [1] - 16:6
**MATTER** [1] - 17:16
**mean** [6] - 5:7, 10:24, 11:8, 11:17, 11:20, 14:3
**means** [1] - 10:25
**Medicine** [1] - 13:14
**MEHDI** [10] - 2:4, 2:5, 4:7, 4:19, 5:17, 5:25, 6:4, 6:16, 7:12, 15:14
**Mehdi** [1] - 4:8
**MELISSA** [1] - 2:9
**Melissa** [1] - 2:9
**mentioned** [1] - 15:16
**mentions** [1] - 14:23
**message** [2] - 7:23
**might** [1] - 8:15
**milligrams** [1] - 14:2
**mind** [1] - 5:9
**MINNEAPOLIS** [1] - 2:11
**minute** [1] - 7:18
**misleading** [1] - 7:8
**MN** [1] - 2:11
**MONSTER** [6] - 1:12, 1:12, 2:14, 2:15, 17:7, 17:8
**Monster** [16] - 4:5, 6:5, 6:6, 6:23, 6:25, 7:2, 7:4, 7:25, 8:6, 8:11, 8:16, 10:7, 11:20, 12:20, 14:6, 15:19
**Monster's** [2] - 6:24, 15:22
**morning** [6] - 4:7, 4:12, 4:13, 4:15, 4:16, 10:16
**MORRISON** [2] - 2:14, 2:18
**most** [2] - 5:6, 10:20
**motion** [2] - 10:19, 13:25
**MOTION** [2] - 1:17, 3:4
**MR** [4] - 4:13, 4:20, 11:14, 15:12
**MS** [9] - 4:7, 4:15, 4:19, 5:17, 5:25, 6:4, 6:16, 7:12, 15:14

## N

**nature** [2] - 5:2, 7:7
**near** [1] - 5:3

**need** [1] - 6:3
**never** [1] - 14:1
**new** [3] - 6:25, 7:3, 8:12
**night** [2] - 8:7, 8:10
**nine** [6] - 7:20, 12:1, 15:17, 15:18, 15:21, 15:24
**nine-year-old** [1] - 15:21
**nine-year-old's** [1] - 15:24
**nine-year-olds** [4] - 7:20, 12:1, 15:17, 15:24
**Ninth** [1] - 15:1
**NLEA** [1] - 10:2
**none** [1] - 11:25
**normally** [1] - 14:11
**NORTH** [1] - 1:24
**nothing** [1] - 16:3
**notice** [1] - 13:18
**number** [2] - 9:5, 10:12
**nursing** [1] - 14:7

## O

**OF** [10] - 1:2, 1:16, 2:4, 2:14, 17:12, 17:15, 17:18, 17:21
**offends** [1] - 10:19
**OFFICIAL** [3] - 1:22, 17:11, 17:24
**old** [2] - 15:20, 15:21
**old's** [1] - 15:24
**olds** [6] - 7:20, 7:21, 12:1, 15:17, 15:18
**ON** [2] - 2:4, 2:14
**ONE** [1] - 2:5
**one** [13] - 4:4, 4:25, 5:4, 6:20, 7:18, 8:17, 8:22, 8:23, 10:15, 10:18, 12:20, 13:4, 15:14
**ones** [1] - 8:17
**ongoing** [1] - 13:12
**opinion** [1] - 13:6
**opposition** [2] - 6:10, 9:20
**Ostiano** [1] - 9:9
**Otero** [1] - 15:4
**outlined** [2] - 6:11, 9:20
**overpaid** [1] - 6:15
**own** [1] - 14:13

## P

**PAGE** [2] - 3:3, 17:17
**paid** [1] - 6:16
**papers** [2] - 4:10, 6:10
**parsing** [1] - 8:13
**part** [1] - 6:1

**particular** [2] - 4:22, 4:23
**particularity** [1] - 8:23
**partly** [1] - 5:20
**party** [2] - 5:12
**partying** [1] - 8:7
**Patel** [1] - 4:14
**PATEL** [2] - 2:18, 4:15
**pay** [1] - 12:11
**paying** [1] - 12:18
**peculiarly** [1] - 14:3
**people** [2] - 9:7, 14:9
**perfect** [1] - 8:3
**perhaps** [1] - 15:9
**person** [1] - 12:18
**PHILLIPS** [1] - 1:5
**phrase** [2] - 11:22, 12:7
**physical** [2] - 5:19, 6:2
**place** [1] - 6:20
**Plaintiff** [1] - 1:8
**plaintiff** [2] - 9:7, 13:20
**plaintiffs** [12] - 4:8, 5:18, 6:12, 7:13, 9:2, 9:14, 11:18, 12:1, 12:16, 15:17, 15:23
**Plaintiffs** [1] - 6:1
**PLAINTIFFS** [1] - 2:4
**plaintiffs'** [1] - 8:24
**point** [5] - 7:17, 12:20, 12:21, 14:1, 15:3
**Pom** [1] - 14:24
**pool** [1] - 5:12
**poolside** [1] - 5:12
**populations** [1] - 13:15
**posting** [1] - 9:13
**precisely** [1] - 5:22
**preempted** [1] - 13:3, 15:6, 15:9
**preemption** [1] - 13:5, 14:24
**pregnant** [1] - 14:7
**premarket** [2] - 9:16, 12:23
**premium** [2] - 6:17, 12:18
**president** [1] - 6:24
**PRESIDING** [1] - 1:5
**press** [3] - 11:9, 11:10
**price** [4] - 7:1, 12:18, 12:20, 12:21
**prices** [1] - 6:21
**primary** [3] - 13:6, 13:24, 14:20
**pro** [1] - 4:10
**problems** [1] - 4:25
**PROCEEDINGS** [2] - 1:16, 17:16
**proceedings** [1] - 16:8
**product** [2] - 9:19, 10:4
**product-specific** [1] - 9:19

**products** [3] - 9:4, 9:6, 12:24
**prolix** [1] - 10:20
**promise** [1] - 7:11
**proportion** [1] - 8:1
**public** [1] - 14:15
**puffery** [8] - 5:5, 7:10, 7:12, 7:22, 8:6, 8:14, 8:20, 11:13
**purchase** [2] - 6:7, 8:25
**purchased** [1] - 12:18
**purchases** [1] - 12:10
**purposes** [1] - 6:12
**PURSUANT** [1] - 17:13
**PURVI** [1] - 2:18
**Purvi** [1] - 4:14
**put** [2] - 8:18, 9:2
**putting** [1] - 8:16

## Q

**Quickset** [1] - 12:10

## R

**ranks** [2] - 10:23, 10:25
**rather** [1] - 6:4
**reach** [3] - 10:4, 10:6, 15:1
**reaches** [1] - 10:7
**really** [6] - 5:9, 5:14, 5:23, 7:8, 9:23, 15:25
**reasons** [1] - 15:6
**recognize** [1] - 13:16
**recognized** [1] - 12:25
**recommending** [1] - 14:7
**reconsider** [1] - 13:19
**REDUCTION** [1] - 17:20
**reference** [1] - 15:21
**references** [1] - 13:6
**regard** [2] - 12:4, 14:25
**regulate** [2] - 9:25, 10:9
**regulates** [1] - 9:24
**REGULATIONS** [2] - 17:17, 17:21
**regulations** [1] - 10:1
**rehab** [1] - 5:12
**relating** [1] - 13:2
**release** [3] - 11:9, 11:10
**relied** [2] - 12:3, 12:14
**relief** [1] - 11:11
**rely** [1] - 10:13
**relying** [1] - 12:17
**remaining** [1] - 10:12
**remand** [1] - 15:4

**remedy** [1] - 5:1
**REPORTED** [1] - 17:15
**REPORTER** [3] - 1:22, 17:11, 17:24
**REPORTER'S** [1] - 1:16
**reports** [3] - 10:22, 10:24, 11:3
**represent** [1] - 9:7
**representation** [2] - 12:9
**representations** [5] - 5:2, 5:13, 7:7, 8:14, 8:16
**requesting** [1] - 9:14
**require** [1] - 9:3
**required** [2] - 14:13, 14:17
**requirement** [2] - 15:7, 15:8
**requirements** [2] - 9:13, 9:22
**requires** [1] - 9:3
**respect** [3] - 11:13, 11:15, 14:25
**respectfully** [1] - 9:15
**respond** [2] - 11:12, 15:13
**responded** [1] - 13:11
**responsibility** [1] - 13:23
**return** [1] - 16:6
**review** [4] - 4:17, 9:16, 9:18, 12:23
**reviews** [1] - 9:18
**rights** [1] - 10:9
**risk** [3] - 11:4, 11:5, 13:15
**risk-taking** [1] - 11:5
**risks** [1] - 11:6
**Rodney** [2] - 6:24, 11:16
**ROOM** [1] - 1:24
**Rucks** [1] - 6:1
**Rule** [1] - 10:19
**ruling** [4] - 4:18, 5:4, 8:19, 10:18
**rulings** [1] - 10:13

## S

**Sacks** [2] - 6:24, 11:16
**safe** [3] - 6:5, 13:1, 14:2
**safety** [4] - 13:2, 13:7, 13:12, 13:23
**SAN** [1] - 2:7
**scientific** [1] - 14:13
**scrutiny** [1] - 10:10
**seat** [1] - 11:5
**SECTION** [1] - 17:13
**section** [1] - 8:22
**see** [2] - 4:25, 6:21
**seeking** [1] - 11:11

**sending** [1] - 7:23
**sensitive** [1] - 14:8
**SESSION** [1] - 4:3
**sexual** [1] - 11:5
**short** [1] - 11:10
**short-claim** [1] - 11:10
**show** [1] - 13:19
**sides** [1] - 4:17
**similar** [1] - 6:23, 9:4
**Similarly** [1] - 14:5
**slow** [1] - 6:3
**soft** [2] - 6:25, 7:3
**someone** [2] - 12:10, 12:14
**sort** [2] - 12:6, 13:8
**sounds** [1] - 10:16
**SOUTH** [1] - 2:11
**SPEAR** [1] - 2:6
**specific** [3] - 9:1, 9:19, 12:2
**specifically** [3] - 8:25, 10:4, 10:5
**spend** [1] - 8:10
**sports** [8] - 6:18, 6:22, 7:2, 8:7, 11:19, 11:20, 11:21, 11:23
**SPRING** [1] - 1:24
**standing** [10] - 4:24, 5:18, 5:21, 6:9, 6:13, 9:7, 11:13, 11:15, 12:4, 15:16
**start** [1] - 5:17
**state** [5] - 4:6, 5:1, 15:1, 15:5, 15:6
**state's** [1] - 9:24
**State's** [1] - 10:9
**statement** [5] - 5:7, 7:11, 11:11, 12:13, 12:15
**statements** [7] - 5:10, 7:15, 11:16, 11:17, 11:19, 14:15
**STATES** [6] - 1:1, 1:23, 17:12, 17:14, 17:18, 17:21
**states** [1] - 9:25
**States** [2] - 10:9, 12:12
**STENOGRAPHICALLY** [1] - 17:15
**strategy** [1] - 10:5
**STREET** [2] - 1:24, 2:11
**study** [2] - 13:12, 14:14
**submission** [1] - 16:6
**substantially** [1] - 9:4
**substitute** [1] - 13:21
**sufficient** [1] - 6:12
**suggest** [2] - 4:23, 5:15
**SUITE** [1] - 2:6
**supplementing** [1] - 14:20
**supplements** [3] -

9:17, 13:10, 13:13
**support** [1] - 12:13

**T**

**targeting** [1] - 15:22
**tentative** [7] - 4:18, 4:22, 5:3, 8:18, 13:16, 14:20, 16:7
**term** [1] - 11:21
**THAT** [2] - 17:13, 17:16
**THE** [27] - 2:4, 2:4, 2:14, 4:4, 4:12, 4:16, 4:21, 5:22, 6:3, 6:14, 7:9, 10:15, 15:11, 15:13, 16:5, 17:11, 17:12, 17:14, 17:15, 17:16, 17:17, 17:18, 17:20, 17:21
**they've** [1] - 12:25
**THIS** [1] - 17:19
**threshold** [1] - 10:13
**TITLE** [1] - 17:14
**TO** [3] - 1:17, 3:4, 17:13
**today** [2] - 13:20, 15:18
**totality** [1] - 10:3
**TOWER** [1] - 2:6
**TRANSCRIPT** [4] - 1:16, 17:15, 17:17, 17:19
**trophy** [1] - 15:23
**true** [1] - 5:10
**TRUE** [1] - 17:14
**truth** [1] - 9:21
**try** [1] - 7:1
**trying** [2] - 10:1, 10:2
**two** [2] - 5:19, 15:19
**type** [2] - 9:13, 9:14
**types** [1] - 5:13

**U**

**UCL** [1] - 10:13
**ultimate** [1] - 12:7
**under** [2] - 9:18, 16:6
**UNITED** [6] - 1:1, 1:23, 17:12, 17:14, 17:18, 17:21
**United** [1] - 12:12
**unlike** [1] - 6:18
**unnecessary** [1] - 13:17
**USA** [1] - 12:11

**V**

**vacuum** [2] - 7:15, 8:14
**varieties** [4] - 8:25, 9:1, 9:8, 11:22
**variety** [1] - 9:2

**various** [3] - 6:21, 8:13, 11:17
**Vegas** [4] - 5:12, 8:8, 8:9
**vice** [1] - 4:10
**VIRGINIAL** [1] - 1:5
**vs** [2] - 1:10, 17:6
**vulnerable** [1] - 13:15

**W**

**warning** [4] - 9:23, 14:5, 14:6, 16:2
**warnings** [5] - 9:12, 9:14, 14:13, 14:14, 14:17
**warranty** [1] - 8:4
**WEINER** [1] - 2:9
**WESTERN** [1] - 1:3
**WILSHIRE** [2] - 2:15, 2:19
**wish** [3] - 4:21, 11:12, 15:13
**WITH** [2] - 17:17, 17:20
**Wolchansky** [2] - 4:8, 4:9
**WOLCHANSKY** [1] - 2:10
**women** [1] - 14:8
**Wonderful** [1] - 14:24
**workshop** [1] - 13:14

**Y**

**year** [7] - 7:20, 12:1, 14:16, 15:17, 15:18, 15:21, 15:24
**young** [2] - 10:5, 10:8
**youth** [2] - 10:6, 16:3