**FILED**

**NOT FOR PUBLICATION**

JUL 08 2016

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEC FISHER, *et al.*,<br><br>       Plaintiffs - Appellants,<br><br>v.<br><br>MONSTER BEVERAGE CORPORATION and MONSTER ENERGY COMPANY,<br><br>       Defendants - Appellees. | No. 13-57094<br><br>D.C. No. 5:12-cv-02188-VAP-OP<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted April 7, 2016
Pasadena, California

Before: FARRIS, SENTELLE,[**] and M. SMITH, Circuit Judges.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable David Bryan Sentelle, Senior Circuit Judge for the U.S. Court of Appeals for the District of Columbia Circuit, sitting by designation.

Plaintiffs-Appellants Alec Fisher, Matthew Townsend, and Ted Cross (collectively, Plaintiffs) appeal the dismissal of their putative consumer class action regarding the safety of certain energy drinks (Monster Drinks) produced by Defendants-Appellees Monster Beverage Corporation and Monster Energy Company (collectively, Monster). We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

**1.** We begin with the question of standing. Plaintiffs' second amended complaint (SAC) makes two types of claims—"on-label" claims and "off-label" claims. The "off-label" claims allege that Monster engaged in a false and deceptive marketing campaign targeting children and adolescents. The "on-label" claims allege certain specific misrepresentations, including a failure to warn consumers of the caffeine content, on the labels and packaging of the Monster Drinks.

Fisher is the only plaintiff whose allegations can be read as alleging exposure to Monster's off-label marketing. At the same time, Fisher fails to allege that he relied on any specific misrepresentations by Monster, instead claiming only that he "had no reason to believe" that Monster Drinks were "not safe or posed health risks." That is not a sufficient allegation of injury-in-fact to support standing. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011). Therefore, Fisher and the off-label claims do not survive Monster's motion to dismiss.

As to Townsend and Cross, Monster does not challenge the district court's holding that they have Article III standing. We agree with the district court that they do.

**2.** Next, we consider whether Plaintiffs successfully stated a claim for relief. As relevant to this appeal, Plaintiffs asserted causes of action under three California statutes: the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*, the False Advertising Laws (FAL), Cal. Bus. & Prof. Code § 17500 *et seq.*, and the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* The three statutes cover interrelated harms. A complaint is sufficient with regard to all three statutes when it alleges that (i) a representation was made, (ii) it was false or likely to mislead a reasonable consumer, (iii) the plaintiff saw and relied on the representations for their truth in purchasing the item, and (iv) the plaintiff would not have bought the item otherwise. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012); *Kwikset*, 246 P.3d at 890-91; *In re Tobacco II Cases*, 207 P.3d 20, 29 & n.8 (Cal. 2009).

Townsend alleges that he relied on Monster's statements on a Monster Drink that "recommends consumers limit daily consumption to three cans." He further alleges that he "read and relied on Monster's affirmative representations that" each of the Monster Drinks he purchased "'quenches thirst'" and "'hydrates like a sports

3

drink.'" Based on these representations, he purchased and consumed Monster Drinks, albeit "never . . . more than three cans a day as prescribed on the labeling." However, after five years of consuming Monster Drinks, he experienced heart palpitations and his blood pressure was measured at the critically high average of 225 over 139. Similarly, Cross alleges that he purchased a Monster Drink with the statement: "It's the ideal combo of the right ingredients in the right proportion to deliver the big bad buzz that only Monster can" (Ideal Combo Statement). Cross "relied" on Ideal Combo Statement's representation "to mean that Monster Drinks were safe (or not unsafe) for consumption," and would not have purchased the Drinks but for that representation.

Although the statements upon which Townsend and Cross relied were not strictly false, it is plausible that they were misleading, which is all that California law requires. *See, e.g.*, *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002); *Keegan*, 838 F. Supp. 2d at 938. Moreover, each has sufficiently plead his injury—i.e., that he suffered harm from consuming the Monster Drinks—and that but for the statements on the labels of the Monster Drinks as safe (or not unsafe), neither would have purchased and consumed Monster Drinks. Accordingly, with respect to the on-label false- and deceptive-marketing claims, Townsend and Cross have stated claims for relief. Furthermore, they have met the requirements of Federal Rule of Civil

Procedure 9 by setting forth "what is false or misleading . . . and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**3.** We next consider whether Plaintiffs' claims are preempted by the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.* We begin with a presumption against preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The FDCA expressly preempts state laws that establish "any requirement for nutrition labeling of food that is not identical to the requirement of [certain statutory provisions, including 21 U.S.C. § 343(q)]." § 343-1(a)(4); *see also* 21 C.F.R. § 100.1(c)(4) (explaining the meaning of "not identical"). Federal law also provides, however, that this provision "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food." Pub. L. No. 101-535, § 6(c)(2), *codified in* 21 U.S.C. § 343-1, at 94.

Title 21 U.S.C. § 343(q) governs nutrition-information labels, including for dietary supplements, and provides only that if caffeine is added to a food, it must be included in the ingredient list. *See* § 343(q)(5)(F); Fed. Food and Drug Admin., *Why isn't the amount of caffeine a product contains required on a food label?*, http://www.fda.gov/AboutFDA/Transparency/Basics/ucm194317.htm (last visited June 30, 2016). Nothing at the federal level requires Monster to include on the label

the *amount* of caffeine in its Monster Drinks marketed as dietary supplements or as "food" or beverage products. *Cf.* 21 C.F.R. § 340.50 (regulating the labeling of caffeine in drugs for human use). However, if Plaintiffs were to succeed on their on-label claims regarding the amount of caffeine in Monster Drinks, then the only remedy would require as much. Therefore, these claims are clearly preempted, as they seek to enforce an ingredient-labeling obligation beyond what federal law requires. *See* 21 U.S.C. § 343-1(a)(4); 21 C.F.R. § 100.1(c)(4).

With respect to Plaintiffs' other on-label claims alleging false or deceptive advertising and marketing, we do not agree with the district court that those claims are preempted. Plaintiffs are not seeking further disclosure with respect to nutritional-labeling requirements, but are instead seeking to remove any false or misleading statements or omissions, or to add the sort of safety warnings expressly excluded from preemption. *See* Pub. L. No. 101-535, § 6(c)(2). For instance, Plaintiffs allege that the Ideal Combo Statement is false and misleading regarding potential health risks. The remedy for that claim does not require Monster to provide consumers with more information about the amount of caffeine in their products. Thus, the on-label claims regarding false statements or omissions that do not trigger caffeine-disclosure requirements are not preempted by the FDCA.

**4.** Finally, we consider whether the district court properly applied the primary-jurisdiction doctrine to the surviving claims. Plaintiffs do not allege that Monster's marketing of the Monster Drinks violated the FDCA, and do not seek to impose any labeling requirements inconsistent with federal law. Instead, they allege violations of consumer-protection laws related to deceptive marketing and advertising. Such cases are not in the sole purview of the FDA; indeed, courts routinely resolve such claims. Therefore, the district court abused its discretion in applying the primary-jurisdiction doctrine to the surviving on-label claims. *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 368, 374-75 (N.D.Cal.2010) (holding that the primary-jurisdiction doctrine did not apply to a claim that a beverage label misled consumers into believing that it was made or bottled in New Mexico).

**5.** The district court from the bench denied Plaintiffs leave to amend. We affirm. The district court correctly dismissed the on-label claims related to caffeine-content and the off-label claims, and Plaintiffs had prior opportunity to amend both sets of claims. A district court's discretion to deny leave to amend is "particularly broad . . . where[, as here] a plaintiff has previously been granted leave to amend and fails to add the requisite particularity to her claims." *Rubke v. Capitol Bancorp Ltd.*,

551 F.3d 1156, 1167 (9th Cir. 2009). Therefore, the district court did not abuse its discretion in denying leave to amend.

* * *

Plaintiff Fisher lacks standing, and therefore the off-label claims do not survive Monster's motion to dismiss. Plaintiffs' state-law on-label claims that seek to subject Monster to a caffeine-content labeling requirement are preempted by federal law. The remainder of Plaintiffs' on-label claims are not preempted, and the FDA does not have primary jurisdiction over such claims.

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this disposition.**