Azra Z. Mehdi (220406)
azram@themehdifirm.com
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 fax

*Counsel for Plaintiffs and the [Proposed] Class*

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TOWNSEND, et al., | CASE NO. 5:12-cv-02188 VAP (KKx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF THOMAS J. MARONICK UNDER FEDERAL RULE OF EVIDENCE 702** |
| v. | |
| MONSTER BEVERAGE CORPORATION, et al., | |
| Defendants. | DATE:      January 29, 2018<br>TIME:      2:00 p.m.<br>JUDGE:    Honorable Virginia A. Phillips<br>CTRM:     8A |
| | Trial Date:   None<br>Date Action Filed: December 12, 2012 |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     STATEMENT OF FACTS ..................................................................... 1

III.    LEGAL STANDARD FOR EVALUATING EXPERT OPINIONS IN
        CONNECTION WITH CLASS CERTIFICATION ............................. 3

IV.     ARGUMENT ........................................................................................ 5

        A.      The Court Should Deny Defendant's Motion Because Dr.
                Maronick's Report and Testimony is Useful to the Evaluation of
                Class Certification ................................................................... 5

        B.      The Court Should Deny Defendant's Motion Because Dr.
                Maronick's Report and Testimony is Based on Scientific Principles
                and Supported by Facts and Data .............................................. 10

        C.      Defendants' Criticisms of Dr. Maronick's Opinions Are Without
                Merit .................................................................................... 12

                1.      Dr. Maronick's Report Should be Admitted Because Dr.
                        Maronick's Survey Results Support his Conclusions ................... 12

                2.      Dr. Maronick's Report Should be Admitted Because Dr.
                        Maronick's Survey Does Not Contain Methodological
                        Errors ......................................................................... 14

        D.      Defendants' Challenges Bear on the Weight, Not the Admissibility,
                of Dr. Maronick's Testimony .................................................. 20

        E.      Dr. Maronick's Testimony Has Been Challenged, and Nevertheless
                Admitted by Multiple Courts ................................................... 21

V.      CONCLUSION ................................................................................. 25

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*A.L.S. Enters. v. Robinson Outdoor Prods., LLC*,
   No. 1:14-CV-500, 2016 U.S. Dist. LEXIS 159046
   (W.D. Mich. May 13, 2016) ........................................................... 24

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. Aug. 1, 2014) ...................................... 25

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ...................................................... 9

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ......................................................... 21

*In re Brazilian Blowout Litig.*,
   No. CV 10-8452 JFW, 2011 U.S. Dist. LEXIS 40158
   (C.D. Cal. Apr. 12, 2011) ............................................................... 23

*City of Goodlettsville v. Priceline.com, Inc.*,
   No. 3:08-cv-00561, 2011 U.S. Dist. LEXIS 45597
   (M.D. Tenn. Apr. 27, 2011) ........................................................... 24

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ......................................................... 5

*In re ConAgra Foods, Inc. ("ConAgra I")*,
   302 F.R.D. 537 (C.D. Cal. 2014) ................................................. 9, 18

*Corcoran v. CVS Health*,
   No. 15-cv-03504-YGR, 2017 U.S. Dist. LEXIS 143327
   (N.D. Cal. Sept. 5, 2017) ................................................................. 4

*Culley v. Lincare Inc.*,
   No. 15-CV-00081-MCE-CMK, 2016 U.S. Dist. LEXIS 105704
   (E.D. Cal. Aug. 10, 2016) ............................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ...................... *passim*

i

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................3, 4, 5

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
  618 F.3d 1025 (9th Cir. Aug. 19, 2010) ........................................ 10, 19, 20

*In re Front Loading Washing Mach. Class Action Litig.*,
  No. 08-51 (FSH), 2013 U.S. Dist. LEXIS 96070
  (D.N.J. July 10, 2013)..........................................................................23

*FTC v. Wash. Data. Res.*,
  No. 8:09-cv-2309-T-23TBM, 2011 U.S. Dist. LEXIS 72886
  (M.D. Fla. July 7, 2011)....................................................................11, 24

*Guido v. L'Oreal, USA, Inc.*,
  No. 2:11-cv-01067-CAS, 2014 U.S. Dist. LEXIS 165777
  (C.D. Cal. July 24, 2014) ........................................................................ 8

*Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*,
  No. 1:02CV00109TC, 2005 U.S. Dist. LEXIS 46132
  (D. Utah Aug. 29, 2005) ...................................................................... 10

*Invisible Fence, Inc. v. Fido's Fence, Inc.*,
  No. 3:09-CV-25, 2013 U.S. Dist. LEXIS 167642
  (E.D. Tenn. Nov. 26, 2013) ................................................................8, 22

*Johns v. Bayer Corp.*,
  No. 09CV1935 AJB DHB, 2013 U.S. Dist. LEXIS 51823
  (S.D. Cal. Apr. 10, 2013)......................................................................24

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ...................................4, 5, 16

*LG Elecs. USA, Inc. v. Whirlpool Corp.*,
  661 F. Supp. 2d 940 (N.D. Ill. 2009)..........................................................18

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................... 8

*Microsoft Corp. v. Motorola, Inc.*,
  904 F. Supp. 2d 1109 (W.D. Wash. 2012)....................................................20

*Morales v. Kraft Foods Grp., Inc.*,
  No. 14-04387 (JAKx), 2017 U.S. Dist. LEXIS 97433
  (C.D. Cal. June 9, 2017)....................................................................14, 15

ii

*Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.,*
No. CV 13-02747 DMG, 2014 U.S. Dist. LEXIS 184585
(C.D. Cal. Oct. 7, 2014) ............................................................................. 17

*Morton & Bassett, LLC v. Organic Spices, Inc.,*
No. 15-cv-01849-HSG, 2017 U.S. Dist. LEXIS 142315
(N.D. Cal. Sept. 1, 2017) ........................................................................... 20

*New Look Party Ltd. v. Louise Paris Ltd.,*
No. 11 Civ. 6433(NRB), 2012 U.S. Dist. LEXIS 9539
(S.D.N.Y. Jan. 11, 2012) ........................................................................... 23

*In re NJOY Consumer Class Action Litig.,*
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................... *passim*

*Oracle Am., Inc. v. Google Inc.,*
No. C 10-03561 WHA, 2016 U.S. Dist. LEXIS 58304
(N.D. Cal. May 2, 2016) ............................................................................. 17

*Ortega v. Natural Balance, Inc.,*
No. 13-05942-AB (Ex), 2014 U.S. Dist. LEXIS 190386
(C.D. Cal. Oct. 29, 2014) ........................................................................... 25

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
653 F.3d 241 (3d Cir. 2011) ...................................................................... 11

*Rogers v. Raymark Indus., Inc.,*
922 F.2d 1426 (9th Cir. 1991) ................................................................... 15

*Salon Fad v. L'Oreal USA, Inc.,*
No. 10 Civ. 5063 (DLC), 2011 U.S. Dist. LEXIS 103936
(S.D.N.Y. Sept. 14, 2011) .......................................................................... 23

*Scotts Co., LLC v. Pennington Seed, Inc.,*
No. 3:12-cv-168, 2014 U.S. Dist. LEXIS 193938
(E.D. Va. Feb. 26, 2014) ............................................................................ 24

*Seacret Spa Int'l v. Lee,*
No. 1:15cv405, 2016 U.S. Dist. LEXIS 29611
(E.D. Va. Mar. 8, 2016) ............................................................................. 24

*Senne v. Kansas City Royals Baseball Corp.,*
315 F.R.D. 523 (N.D. Cal. 2016) ................................................................. 4

*In re SFPP Right-Of-Way Claims,*
    No. SACV 15-00718 JVS (DFMx), 2017 U.S. Dist. LEXIS 85973
    (C.D. Cal. May 23, 2017) ................................................................. 4

*Spann v. J.C. Penney Corp.,*
    307 F.R.D. 508 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312
    (C.D. Cal. 2016) ............................................................................. 4

*Stathakos v. Columbia Sportswear Co.,*
    No. 15-cv-04543-YGR, 2017 U.S. Dist. LEXIS 72417
    (N.D. Cal. May 11, 2017) ................................................................ 6

*Stubbs v. Teleflora, LLC,*
    No. 2:13-cv-03279-ODW, 2013 U.S. Dist. LEXIS 177822
    (C.D. Cal. Dec. 18, 2013) ........................................................ 22, 23

*Tait v. BSH Home Appliances Corp.,*
    289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 4, 6

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.,*
    648 Fed. Appx. 609 (9th Cir. Apr. 14, 2016) .............................. 10

*United States v. Pritchard,*
    993 F. Supp. 2d 1203 (C.D. Cal. 2014) ......................................... 3

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ............. 4

*Wendt v. Host Int'l,*
    125 F.3d 806 (9th Cir. 1997) ....................................................... 20

*Wish Atlanta, LLC v. Contextlogic, Inc.,*
    No. 4:14-CV-51 (CDL), 2015 U.S. Dist. LEXIS 161208
    (M.D. Ga. Dec. 2, 2015) .............................................................. 25

*Zeisel v. Diamond Foods, Inc.,*
    No. C 10-01192 (JSW), 2011 U.S. Dist. LEXIS 60608
    (N.D. Cal. June 7, 2011) .............................................................. 23

*Zelhofer v. Metro. Life Ins. Co.,*
    No. 2:16-cv-00773 TLN AC, 2017 U.S. Dist. LEXIS 47069
    (E.D. Cal. Mar. 28, 2017) ............................................................ 21

PLS. OPP MTN. STRIKE EXPERT MARONICK        5:12-cv-02188 VAP (KKx)

**<u>Statutes, Rules and Regulations</u>**

Federal Rules of Civil Procedure

    Rule 23 ................................................................................................................. 4
    Rule 23(b)(3) ....................................................................................................... 9

Federal Rules of Evidence

    702 ........................................................................................................... *passim*
    702(a) ................................................................................................................. 6

Model Rules of Professional  Conduct

    Rule 3.3(a)(2) .................................................................................................. 21

**<u>Secondary Authorities</u>**

Jacob Jacoby, *Are Closed-Ended Questions Leading Questions?*

    Trademark and Deceptive Advertising Surveys: Law, Science, and
    Design (ABA 2012) ........................................................................................ 19

PLS. OPP MTN. STRIKE EXPERT MARONICK          5:12-cv-02188 VAP (KKx)

I.    **PRELIMINARY STATEMENT**

Plaintiffs' consumer perception expert Dr. Thomas Maronick's report and testimony is admissible so long as it is relevant, reliable, and useful to the Court in its evaluation of the class certification requirements. Defendants Monster Beverage Corporation and Monster Energy Company's motion to strike Dr. Maronick's testimony relies on meritless arguments that lack any legal support, and should thus be denied.

Dr. Maronick's report and testimony are admissible pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Dr. Maronick is qualified by his academic and professional experience. The survey he conducted, and its resulting conclusions, comport with generally accepted practices in the field of market research. His conclusions are supported by reliable and relevant data. His testimony will aid both the Court in its class certification determination and the fact finder in this litigation.

Even if any of the Defendants' picayune criticisms against Dr. Maronick were valid, they would more properly go toward the weight of Dr. Maronick's testimony, rather than support its exclusion. Moreover, Dr. Maronick's expert testimony has been unsuccessfully challenged multiple times. Accordingly, Plaintiffs respectfully submit that Defendants' Motion to Strike the Expert Report and Testimony of Thomas J. Maronick Under Fed. R. Evid. 702 should be denied.

II.    **STATEMENT OF FACTS**

Plaintiffs Matthew Townsend and Ted Cross have requested certification of the following two classes:

    i)    All persons who purchased the original Monster Energy drink for personal use and not for resale from December 12, 2008 to the present ("Monster Energy Class"); and

    ii)    All persons who purchased Monster Rehab Tea + Lemonade + Energy, Monster Rehab Rojo Tea + Energy, Monster Rehab

1

Green Tea + Energy, Monster Rehab Protean + Energy, and Monster Rehab Tea + Orangeade + Energy (collectively "Monster Rehab") for personal use and not for resale from March 1, 2011 to the present ("Monster Rehab Class").

The specific misstatements on Monster Energy cans are: (1) "It's the ideal combo of the right ingredients in the right proportion to deliver the big bad buzz that only Monster can" and (2) "Consume responsibly – Max 1 can every 4 hours, with limit 3 cans per day. Not recommended for children, people sensitive to caffeine, pregnant women or women who are nursing."

The specific misstatements on Monster Rehab cans are: 1) "Hydrates like a sports drink"; 2) "RE-HYDRATE"; and 3) "Consume responsibly – Max 1 can per 4 hours, with limit 3 cans per day. Not recommended for children, people sensitive to caffeine, pregnant women or women who are nursing."

Dr. Maronick was retained by Plaintiffs to gather data from a group of consumers of energy drinks, perform a consumer perception survey and provide conclusions he could draw from the data collected as well as provide testimony as to a reasonable consumer's perception of the misrepresentations/omissions made on Monster Energy and Monster Rehab drink labels. Report of Dr. Thomas Maronick, [ECF Doc. 95-5] ("Maronick Report"), ¶4. Defendants seek to exclude both Dr. Maronick's Report and his testimony.

Following generally accepted standards of research and survey methodology, Dr. Maronick identified individuals who drank energy drinks, and specifically drank Monster branded energy drinks most frequently. *Id.* at ¶4. Dr. Maronick excluded anyone under the age of 18 from the survey, and insured an end population that included 75% men and 25% women, based on his observations of the general energy drink consumer marketplace. Maronick Report, ¶14. Respondents were then randomly placed in different "blocks," with each block testing one of the statements at issue. Maronick Report, ¶15. Once in their block, respondents were first shown a can of

2

Monster Energy drink, including the front and back labels. Maronick Report, ¶¶15-17. Respondents were given the opportunity to look at the can again before answering any questions. Then, respondents were asked open ended questions, followed by closed ended questions, about certain statements highlighted on the labels. Maronick Report, ¶¶15-17. All of respondents' answers were recorded verbatim. Maronick Report, ¶¶15-17. A total of 480 individuals completed the survey, and no respondent was assigned to more than one block. Maronick Report, ¶18.

Dr. Maronick followed generally accepted practice in coding the data, and provided his conclusions based on his analysis of the data in his Report, dated June 26, 2017. For example, Dr. Maronick observed that 42.4% of respondents understood the "Ideal combo of right ingredients" to mean that Monster Energy provided the right energy boost. Maronick Report, Table 5. He further observed that 32.9% of respondents understood the language to mean Monster Energy provided the right balance of ingredients. Maronick Report, Table 5. From this data, Dr. Maronick concluded that the "Ideal Combo" statement was most frequently understood by consumers to mean that Monster Energy gives the right energy boost, and has the right balance of ingredients. Maronick Report, ¶23.

Dr. Maronick also concluded that the statements at issue reinforced consumers' beliefs that Monster Energy is an important and safe source of energy; that Monster Rehab provides hydration and specifically, the same hydration as a sports drink; and that consumption limits on Monster's "Consume Responsibly" safety warning were important to consumers. Maronick Report, ¶¶7-10, 35-39.

## III. LEGAL STANDARD FOR EVALUATING EXPERT OPINIONS IN CONNECTION WITH CLASS CERTIFICATION

"Expert testimony is liberally admitted under the Federal Rules." *United States v. Pritchard*, 993 F. Supp. 2d 1203, 1207 (C.D. Cal. 2014). On a motion for class certification, courts apply *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) to expert testimony. *Ellis v. Costco Wholesale Corp.*, 657

3

1  F.3d 970, 982 (9th Cir. 2011). "[A]t the class certification stage, district courts are not

2  required to conduct a full *Daubert* analysis. Rather, district courts must conduct an

3  analysis tailored to whether an expert's opinion was sufficiently reliable to admit for

4  the purpose of proving or disproving Rule 23 criteria, such as commonality and

5  predominance." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal.

6  2012). In *Tait*, the Court exhaustively analyzed *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

7  338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), Ninth Circuit precedent including *Ellis*,

8  and extra-circuit precedent, to conclude that *Dukes* does not require a complete *Daubert*

9  analysis and that *Ellis* suggests district courts only have to apply a tailored approach. *Id.*

10  Since *Tait*, other Ninth Circuit district courts have adopted its analysis.  "[A]t this early

11  stage, robust gatekeeping of expert evidence is not required; rather, the court should

12  ask only if expert evidence is useful in evaluating whether class certification

13  requirements have been met." *Corcoran v. CVS Health*, No. 15-cv-03504-YGR, 2017

14  U.S. Dist. LEXIS 143327, at *9-*10 (N.D. Cal. Sept. 5, 2017) (internal quotations and

15  citations omitted). *See also In re SFPP Right-Of-Way Claims*, No. SACV 15-00718 JVS

16  (DFMx), 2017 U.S. Dist. LEXIS 85973, at *7-*9 (C.D. Cal. May 23, 2017); *Senne v.

17  Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 587 (N.D. Cal. 2016), *on reconsideration

18  in part*, No. 14-CV-00608-JCS, 2017 U.S. Dist. LEXIS 32949 (N.D. Cal. Mar. 7, 2017);

19  *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 516 (C.D. Cal. 2015), *modified*, 314 F.R.D.

20  312 (C.D. Cal. 2016).

21      Generally, expert testimony is admissible if the party offering such evidence

22  shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire

23  Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Daubert*, 509

24  U.S. at 590-91. Federal Rule of Evidence 702 permits expert testimony if:

25      (a) the expert's scientific, technical, or other specialized knowledge will

26      help the trier of fact to understand the evidence or to determine a fact in

27      issue; (b) the testimony is based on sufficient facts or data; (c) the

28      testimony is the product of reliable principles and methods; and (d) the

4

expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Advisory Committee notes to Rule 702 concerning the 2000 amendment explains that the addition of a requirement that the expert's testimony be based on "'sufficient facts or data' [was] not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1070-71 (C.D. Cal. 2015) (internal quotations and citations omitted).

Testimony is "relevant" if the "knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). An expert's opinion rests on a "reliable foundation" if it is rooted "'in the knowledge and experience of the relevant discipline.'" *Id.* at 1043-44 (citation omitted). The test for reliability is flexible and depends on the discipline involved. *Kumho*, 526 U.S. at 141; *see also Jinro Am., Inc. v. Secure Invs.*, Inc., 266 F.3d 993, 1004 (9th Cir. 2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to "opinion" testimony.'"). Furthermore, the exclusion of expert testimony is "the exception rather than the rule." *See* Fed. R. Evid. 702, Advisory Committee Note to 2000 amendment.

On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiff's claims; instead, the testimony must be relevant in assessing "whether there was a common pattern and practice that could affect the class *as a whole.*" *Ellis*, 657 F.3d at 983 (emphasis in original). Dr. Maronick's Report and testimony meet all the applicable standards here.

## IV.    **ARGUMENT**

### A.    **The Court Should Deny Defendant's Motion Because Dr. Maronick's Report and Testimony is Useful to the Evaluation of Class Certification**

Defendants attempt to bog the Court down with trivial criticisms of Dr. Maronick's survey methodology and conclusions. Not only are Defendants' criticisms

5

invalid, they are irrelevant to the inquiry the Court must make at this point. Indeed, at this stage of litigation, the only thing the Plaintiffs are required to show is that Dr. Maronick's testimony is "'useful in evaluating whether class certification requirements have been met.'" *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 U.S. Dist. LEXIS 72417, at *7 (N.D. Cal. May 11, 2017); *Culley v. Lincare Inc.*, No. 15-CV-00081-MCE-CMK, 2016 U.S. Dist. LEXIS 105704, at *1 (E.D. Cal. Aug. 10, 2016); *Tait*, 289 F.R.D. at 492-93. Furthermore, "[a]n expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified, (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable." *Stathakos*, 2017 U.S. Dist. LEXIS 72417, at *7.

Dr. Maronick's survey, Report, and testimony will "help the trier of fact to understand the evidence or to determine a fact in issue," as required by Rule 702(a). They will help the trier of fact understand how consumers perceived the misstatements at issue on Monster Energy and Monster Rehab cans, and how the materiality of a reasonable consumer's perception is a common question of fact to the class as a whole.

Dr. Maronick's data and conclusions support the elements of class certification, specifically commonality and predominance of the legal and factual issues amongst the class, thus qualifying his report and testimony for admission. Dr. Maronick concluded that consumers perceive the statements made on Monster Energy drink labels to have certain meanings. Maronick Report, ¶10. His data solidly demonstrates commonality amongst class members in their understanding of the misrepresentations at issue. Indeed, the data shows a majority of consumers had the same or very similar perceptions of the misrepresentations, a common question for the class and a predominant issue in this case. His data likewise shows that the misrepresentations were material to consumers.

His data demonstrates that a majority of consumers (62.4%) drink Monster Energy for the energy boost it provides. Maronick Report, Table 3. The data shows that a majority of consumers (a combined 75.3% in response to an open-ended

question, and 81.8% in response to a close-ended question) understood the "ideal combo of right ingredients" statement to mean that Monster Energy provided the right energy boost, or the right balance of ingredients. Maronick Report, Table 5 and 6. The data shows that a majority of consumers (43.1% in response to an open-ended question, and 75.2% in response to a close ended question) understood the "rehydrates" statement to mean that Monster Rehab provided hydration. Maronick Report, Table 7 and 8. The data shows that a vast majority of consumers (80.6%) understood the "hydrates like a sports drink" statement to mean that Monster Rehab drinks have the same level of electrolytes as a sports drink. Maronick Report, Table 10.

Lastly, Dr. Maronick's data shows that a vast majority of consumers (combined 55.2% in response to an open-ended question, and 81.9% in response to a close-ended question) understood the "Consume Responsibly" statement as an important definition of reasonable consumption. Maronick Report, Table 11 and 12. Having demonstrated the importance of Dr. Maronick's data and conclusions in the evaluation of the class certification requirements, his report and testimony should not be excluded.

Moreover, there is no dispute that Dr. Maronick is qualified as an expert.[1] Defendants do not challenge Dr. Maronick's qualifications. Thus, Plaintiffs will not expound on his qualifications here. Likewise, Dr. Maronick's report and testimony are relevant to the suit overall, and to the determination of Plaintiffs' motion for class certification. As stated in his report, Dr. Maronick was retained to "assess consumers' perceptions" of certain statements made on Monster branded drink cans. Maronick Report, ¶4. Dr. Maronick tested the meaning of the misrepresentations to consumers,

---

[1] Dr. Maronick has nearly forty years of experience with designing, conducting, and analyzing market surveys. Throughout his career, he has designed well over 400 surveys. Dr. Maronick's ample academic and professional experience clearly qualify him as an expert under Rule 702. Moreover, Dr. Maronick's demonstrated record of marketing expertise and experience both as a professor and an expert witness inure him to aiding the trier of fact in an understanding of the evidence and facts at issue. *See* Maronick Report, ¶¶1-3 and Exhibits A and B for Dr. Maronick's credentials.

and the results enabled him to assess consumer perceptions of the statements made on Monster Energy drinks. From his analysis, he concluded that consumers perceive Monster Energy drinks to have an appropriate and safe balance of ingredients that provide an energy boost while hydrating like a sports drink, and that consumers heed the consumption limits provided on Monster Energy drink labels.  Maronick Report, ¶¶10, 39.

Plaintiffs have offered Dr. Maronick's Report and testimony to demonstrate commonality and predominance of legal and factual questions amongst putative class members, as well as to show the materiality of the misstatements to consumers. Dr. Maronick's report and testimony will help the trier of fact by explaining his findings regarding the public perception of the challenged statements in this case. Thus, his Report and testimony should be admitted. *See Invisible Fence, Inc. v. Fido's Fence, Inc.*, No. 3:09-CV-25, 2013 U.S. Dist. LEXIS 167642, at *8 (E.D. Tenn. Nov. 26, 2013) (denying motion to strike Dr. Maronick's declaration and holding that his testimony was relevant, reliable, and would be useful to the fact finder).

Dr. Maronick's opinion will also assist the trier of fact with the common question of materiality. Since materiality concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer, whether Defendants' mislabeling is material presents a common question of fact suitable for class litigation. *Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-01067-CAS (JCx), 2014 U.S. Dist. LEXIS 165777, at *46-*47 (C.D. Cal. July 24, 2014).

Defendants' contention that Dr. Maronick cannot draw conclusions regarding materiality because he did not ask why putative class members purchase Monster branded energy drinks, is misguided. Defendant's Motion to Strike the Expert Report and Testimony of Thomas Maronick, [ECF Doc. No 110] ("Def. Mem.") at 10-11. Whether Defendants' labels "caused" the perceptions of consumers is not the relevant inquiry on this motion. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) ("Under California's UCL, restitution is available to absent class members

8

without individualized proof of deception, reliance, or injury."). The reasonable person standard does not require a causal determination of where consumers' beliefs originated but simply asks what they could be. All consumers in the real marketplace typically come with preconceptions. Plaintiffs were thus not trying to test what respondents with no preconceptions would have thought, but, rather, what a reasonable person with preconceptions could believe after looking at the Monster labels, which is the only relevant inquiry now. Dr. Maronick's study provides that information by showing how a large group of reasonable consumers of the product interpret the words on Defendants' labels.

Defendants' argument demanding a causal link to show materiality is flawed. Materiality is a merits determination that is inappropriate at the class certification stage. *See In re ConAgra Foods, Inc. ("ConAgra I")*, 302 F.R.D. 537, 549 (C.D. Cal. 2014) ("On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiff's claim; instead, the testimony must be relevant in assessing 'whether there was a common pattern and practice that could affect the class as a whole.'") (quoting *Ellis*, 657 F.3d at 983). Plaintiffs need not prove materiality at the class certification stage but to obtain class certification under Rule 23(b)(3), Plaintiffs must show that their case is susceptible of class-wide proof. *See, e.g., Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (stating that proof of materiality is to be determined by the trier of fact at trial, but that plaintiffs at the class certification stage still must show that materiality is a "common question of fact suitable for treatment in a class action") (quotation marks and citation omitted). Dr. Maronick's Report and testimony will also help the trier of fact to understand the materiality of the misstatements.

Dr. Maronick is not required to demonstrate that Monster's labels actually caused consumers to be misled. *See In re NJOY*, 120 F. Supp. 3d at 1081. In *In re NJOY*, a false advertising case involving e-cigarettes, defendants' expert Dr. Kent Van Liere — also one of the experts for Defendants here — challenged Dr. Maronick's

9

expert testimony at the class certification stage on very similar grounds as the present motion. The court held that Dr. Maronick's survey tended to show that consumers understood the advertisements at issue to mean that NJOY e-cigarettes were safe or safer than traditional cigarettes, and that at the class certification stage, his survey "need not do more." *Id.* (class certification denied on other grounds). Here, like in *NJOY*, Dr. Maronick's conclusions tend to show that the statements made on Monster Energy and Monster Rehab cans are material to consumers, and that consumers have certain perceptions, or misperceptions of those statements. Just as with *In re NJOY*, Dr. Maronick need not do more.

Plaintiffs are not even required to offer expert testimony at this stage of litigation, much less meet the rigorous standards Defendants erroneously demand. Dr. Maronick is qualified. His testimony is relevant and reliable. His testimony is useful in evaluating class certification requirements and demonstrating a common pattern of perception that effects the class as a whole. For the time being, that is all that is required of an expert. Thus, Defendants' Motion to Strike Dr. Maronick's testimony should be denied.

**B.     The Court Should Deny Defendant's Motion Because Dr. Maronick's Report and Testimony is Based on Scientific Principles and Supported by Facts and Data**

Dr. Maronick's survey results and accompanying conclusions are valid and reliable, and should not be excluded. Dr. Maronick followed the guidelines and standards generally employed in survey research, as well as the criteria set forth in the Reference Guide on Survey Research, published by the Federal Judicial Center. Maronick Report, ¶¶11-12. It is well settled in the Ninth Circuit that "'survey evidence should be admitted as long as [it is] conducted according to accepted principles and [is] relevant.'" *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 Fed. Appx. 609, 613 (9th Cir. Apr. 14, 2016); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1037 (9th Cir. Aug. 19, 2010) ); *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*,

10

1  No. 1:02CV00109TC), 2005 U.S. Dist. LEXIS 46132, at *3-*6 (D. Utah Aug. 29, 2005)

2  (rejecting relevance challenge to survey where expert clarified that the survey was

3  intended to measure consumer comprehension, i.e., what the respondents understood

4  the alleged false statements in the advertisements to mean, and not to prove whether

5  those statements were true or false).

6      It is irrelevant that Dr. Maronick did not account in his survey for the fact that

7  Monster changed the wording on its labels over the course of this case. Def. Mem. at

8  12. Understanding how reasonable consumers interpret the wording on labels is central

9  to the claims of mislabeling, regardless of when the words appeared on the cans. The

10 "initial step in analyzing a statement challenged as false advertising is to 'determine[]

11 what message is conveyed.'" *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d

12 241, 248 (3d Cir. 2011) (internal quotations and citations omitted). Dr. Maronick's data

13 and resulting conclusions make that determination without regard to when the

14 misstatements appeared on the labels because it is largely unnecessary, and likely would

15 not have changed the results.

16     Defendants also challenge Dr. Maronick's conclusion that Monster Rehab

17 label's hydration and "hydrates like a sports drink label" messages are inherently

18 contradictory with the consumption limitation, as unsupported. Def. Mem. at 13.

19 First, Dr. Maronick has made a common-sense observation based upon his survey

20 results.  Unlike in *FTC v. Wash. Data. Res.*, No. 8:09-cv-2309-T-23TBM, 2011 U.S.

21 Dist. LEXIS 72886 (M.D. Fla. July 7, 2011) a case relied on by Defendants in which

22 Dr. Maronick simply provided his personal narrative of the documentary evidence in

23 the case, here he has conducted a reliable consumer perception survey. Dr. Maronick's

24 conclusion is not only supported by his survey results, it also makes logical sense.

25     Dr. Maronick employed the use of open ended and close ended questions, thus

26 eliciting both top of mind and more thorough results from survey respondents.

27 Respondents were not given advance notice as to the subject of Dr. Maronick's survey,

28 thus avoiding bias. Dr. Maronick properly decided to omit the use of a control group

because his survey was not a complex one comparing labels or seeking the incremental impact of the misstatements on the respondents. Instead, he employed control questions and answer choices that included "Don't Know/Not Sure." As discussed above, Dr. Maronick's survey and conclusions are relevant to the litigation and specifically to class certification, and are valid and reliable. Thus, Defendant's Motion to Strike should be denied.

### C.    Defendants' Criticisms of Dr. Maronick's Opinions Are Without Merit

Defendants set forth numerous criticisms of Dr. Maronick's survey and conclusions. As discussed below, they are all without merit and do not warrant exclusion of his survey results or opinions.

#### 1.    Dr. Maronick's Report Should be Admitted Because Dr. Maronick's Survey Results Support his Conclusions

Defendants first contend that Dr. Maronick's survey results do not support his conclusions because Dr. Maronick did not inquire into consumers' purchasing decisions or specifically ask whether the survey respondent had ever purchased a Monster Energy drink. Def. Mem. at 11. This is simply not the case.

Dr. Maronick's survey universe included a "nationwide sample of individuals 18 years or older *who drink Monster branded energy drinks*." Maronick Report, ¶14 (emphasis added). Dr. Maronick further stated that respondents who agreed to participate in the survey "were *first asked whether they drank energy drinks and specifically Monster branded energy drinks*." Maronick Report, ¶14 (emphasis added). Likewise, Dr. Maronick's survey results revealed that "almost 60% of respondents consumed one can [of Monster Energy Drink] per day, with most of the remaining (32.1%) drinking two cans per day." Maronick Report, ¶20. From this, Dr. Maronick inferred that his survey respondents had purchased a Monster Energy drink at some point or another, and by his own judgment, that was sufficient for his survey:

Q:    Why didn't you ask them to identify the drink they most frequently

12

1    purchased? . . . .

2    A:    In my judgment they are the same thing. In my experience

3    [Monster Energy drinks] are something that they buy for themselves.

4                              * * *

5    They are buying it. They are drinking it. They are the ones that are

6    holding this can in their hand. So I think that was the appropriate

7    language to use.

8    Declaration of Azra Z. Mehdi in Support of Plaintiffs' Opposition, filed concurrently

9    herewith ("Mehdi Decl."), Ex. 1 (Maronick Depo. at 72:1-14).

10    Dr. Maronick relied on years of experience, the data collected, the age grouping

11    of the respondents and his own sound judgment to infer that respondents aged 18-45,

12    who frequently consumed Monster branded energy drinks, had also purchased them.

13    This judgment is further reinforced by the data showing that over 80% of Monster's

14    retail sales are from convenience stores and gas stations.  Keith Ugone Report, [ECF

15    Doc. 114-5] at 5.

16    Dr. Maronick was not tasked with, nor was he required to, opine as to whether

17    the challenged statements caused consumers to purchase Monster, as Defendants

18    attempt to suggest. As Dr. Maronick stated in his deposition, the target market of his

19    survey was consumers who *drink* Monster branded energy drinks. Mehdi Decl., Ex. 1

20    (Maronick Depo. at 186:3-8) ("It should have been 'drink' as opposed to 'buy' because

21    that's clearly what the focus of the survey was."). Dr. Maronick even testified that his

22    survey results would not have been affected if none of the respondents had ever

23    purchased Monster Rehab products because "they are drinking Monster Energy

24    products," and thus are generally familiar with them. *Id.* (Maronick Depo. at 74:24-

25    75:15).

26    Dr. Maronick made conclusions as to consumer perception of the meaning of

27    the challenged statements based on his survey results, and correctly inferred that if a

28    respondent stated they drank Monster Energy drinks, they were also purchasers of

13

Monster branded energy drinks. Specifically inquiring as to whether a respondent had ever purchased a Monster Energy or Monster Rehab drink was, thus, unnecessary. Dr. Maronick's survey was valid, and his conclusions are adequately supported.

### 2.    Dr. Maronick's Report Should be Admitted Because Dr. Maronick's Survey Does Not Contain Methodological Errors

Defendants baselessly challenge Dr. Maronick's survey methodology in various, ineffective ways.  As discussed below, each of Defendants' critiques must fail.

#### a.    The Relevant Universe Was Appropriately Defined

Defendants argue that Dr. Maronick's pool of survey respondents was simultaneously overbroad and under inclusive because he did not follow the exact putative class definitions when designing his survey, and did not define the relevant universe to exclusively include purchasers of Monster Energy and Monster Rehab drinks. Def. Mem. at 14-15. This argument is nonsensical. "As a general rule, 'courts within the Ninth Circuit are reluctant to exclude survey evidence on the basis of an overinclusive or underinclusive target population.'" *Morales v. Kraft Foods Grp., Inc.*, No. 14-04387 JAKx), 2017 U.S. Dist. LEXIS 97433, at *34 (C.D. Cal. June 9, 2017) (citations omitted). Defendants seem to presume that the class definition establishes whose preferences matter. "[T]here is no requirement that the universe of those surveyed overlap entirely with the class." *Id.* at *37 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997)). Again, Dr. Maronick was retained for the purpose of determining consumer perceptions of the label misstatements within the energy drink marketplace, not solely within the purported class.

Moreover, there is no requirement that a survey for consumer perception be limited to consumers who actually purchase the product at issue. *See id.* at *36-*37. In *Morales*, an expert was challenged for including consumers in his survey who had purchased Kraft cheese products, but not necessarily the exact Kraft cheese product at issue. *Id.* There, the court held that purchasers of Kraft products were likely to at least be familiar with the product at issue, thus qualifying them as survey respondents. *Id.*

1     The court also noted that the challenged expert provided a reasonable explanation for

2 his decision to include those respondents. *Id.* Ultimately, the court found against

3 exclusion, concluding that "whether that decision should reduce the weight accorded

4 to the survey results is an issue for the finder of fact." *Id.*

5     Just like in *Morales*, Dr. Maronick limited his survey population to consumers

6 who regularly drank Monster branded energy drinks. Those consumers are likely to be

7 familiar with Monster Energy and Monster Rehab labeling. Dr. Maronick also

8 provided an explanation as to why he chose not to limit his survey population to only

9 those who had purchased the specific Monster branded energy drinks at issue here. *See*

10 Mehdi Decl., Ex. 1 (Maronick Depo. at 72:1-14) ("In my experience this is something

11 that [respondents] buy for themselves."); 74:24-75:15 ("[Respondents] are looking at

12 the claims being made on these products. So in my judgment they are able to look at

13 the different claims on the difference cans, whether they have consumed it or not.");

14 186:3-8. Therefore, any challenge of Dr. Maronick's relevant universe goes towards the

15 weight placed on his testimony by the fact finder, rather than exclusion.

16           **b.    The Sample of Respondents was Representative**

17     Defendants next attempt to disqualify Dr. Maronick's survey results apparently

18 based on Dr. Maronick's failure to create a survey pool that exactly mirrored Monster

19 energy drink consumers, presumably based on Monster's own purchaser information.

20 Notably, Defendants can provide no authority suggesting this is a requirement of an

21 admissible market research survey.

22     Dr. Maronick's survey included 75.2% men and 24.8% women. Maronick

23 Report, Table 1. Dr. Maronick has stated that he chose to limit his survey population

24 to three quarters male and one quarter female based on his own personal experience

25 and observations of the energy drink marketplace. The use of an expert's personal

26 experience in survey design is not a basis for a *Daubert* challenge. "A witness can

27 qualify as an expert through practical experience in a particular field, not just through

28 academic training." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991)

15

1   (citation omitted); *see also* Fed. R. Evid. 702, Advisory Committee Notes (2000)

2   ("Nothing in this amendment is intended to suggest that experience alone — or

3   experience in conjunction with other knowledge, skill, training or education — may

4   not provide a sufficient foundation for expert testimony. . . . In certain fields,

5   experience is the predominant, if not sole, basis for a great deal of reliable expert

6   testimony."); *In re NJOY*, 120 F. Supp. 3d at 1081-82. Dr. Maronick employed his

7   knowledge from over 600 marketing research surveys he had conducted as well as

8   more than three decades as a professor on college campuses interacting with people of

9   all ages and genders to make this judgment call.

10          Indeed, the applicable test is whether the expert employs "the same level of

11  intellectual rigor that characterizes the practice of an expert in the relevant field."

12  *Kumho Tire Co.*, 526 U.S. at 152 (alluding to the propriety of expert testimony based on

13  personal experience, stating that the objective of a *Daubert* requirement is to ensure

14  that an expert, "whether basing testimony upon professional studies or personal

15  experience, employs in the courtroom the same level of intellectual rigor that

16  characterizes the practice of an expert in the relevant field"). Here, Dr. Maronick

17  employed such intellectual rigor in the determination of his survey universe.

18          The survey pool included a wide range of age groups – 35.9% of respondents

19  were between the ages of 18 and 24, while 35.7% were age 35-44 and 19.1% age 45 –

20  54. Maronick Report, Table 1. The survey pool also included a wide range of education

21  levels – 19.7% had some high school or less, 21.2% had some college, 10.1% had two-

22  year college, 37.7% had four-year college, and 11.5% had graduate school experience.

23  Maronick Report, Table 1. Moreover, at least one study has found that the substantial

24  majority of energy drink consumers are males aged 18-34 (82%) and females aged 18-

25  34 (58%). *See* Expert Report of Stefan Boedeker, [ECF Doc. 95-6], ¶17. Clearly, Dr.

26  Maronick's pool of survey respondents was diverse and indicative of the marketplace.

27  There is no requirement that Dr. Maronick's survey replicate exact Monster sales

28  demographics, as Defendants unsupported criticism seems to suggest.

16

Notably, Defendants' expert also put age parameters on his survey. Expert Report of Dr. Kent Van Liere, [ECF Doc. No. 114-6] ("Van Liere Report"), ¶30. Both experts did not include respondents under the age of 18, for logical reasons. Dr. Maronick went further and excluded respondents over the age of 55, because he did not believe those people were in Monster's consumer target demographic. Mehdi Decl., Ex. 1 (Maronick Depo at 65:2-15). It is hypocritical for Defendants to challenge Dr. Maronick's age and gender judgment calls when their own experts engaged in the same exercise. In accordance with the general principles of survey research, Dr. Maronick surveyed a wide range of people within the energy drink marketplace. Thus, Dr. Maronick drew a representative sample of survey respondents.

### c. The Inclusion of a Control Group is Not Necessary for Admissibility of Expert Opinion

Defendants take issue with Dr. Maronick's decision not to include a control group in his survey. Def. Mem at 17-18. However, in support of their argument, Defendants provide little more than the definition of a control group and a statement from Dr. Maronick's deposition as to the purpose of a control group; namely, to provide a means of measuring the incremental impact of a claim on survey respondents. *See* Def Mem. at 17, lines 7-19. Defendants' use of Dr. Maronick's testimony contradicts their argument and reveals a fatal misunderstanding of the purpose of Dr. Maronick's survey.

"[A] control group is not required for a survey that purports only to understand what [respondents] *perceive* as relatively more or less important factors in their decision-making process." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 U.S. Dist. LEXIS 58304, at *36 (N.D. Cal. May 2, 2016) (emphasis in original); *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, No. CV 13-02747 DMG (AGRx), 2014 U.S. Dist. LEXIS 184585, at *9, *25 (C.D. Cal. Oct. 7, 2014) ("In any case, the lack of a control group does not render a confusion survey so fatally flawed as to be inadmissible."). As Dr. Maronick stated, he was retained to conduct research regarding consumers'

17

perceptions of the meanings of the statements at issue. Maronick Report, ¶4. He was not retained to determine the incremental impact of the statements on consumers' decisions to purchase Monster Energy drinks. Maronick Report, ¶4. Thus, a control group was not necessary.

Moreover, Dr. Maronick took alternate steps against bias by including control questions and answers, including "none of the above," "don't know/not sure," and "other" as possible answers. *See* Maronick Report, Exhibit C, Q16, Q20, Q24, Q29, Q33; *In re NJOY*, 120 F. Supp. 3d at 1078 (holding Dr. Maronick's use of other methods to prevent bias mitigated the significance of the decision not to employ a control group); *See, e.g., LG Elecs. USA, Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 954-55 (N.D. Ill. 2009) (finding that a survey's inclusion of a "don't know" option as an answer to an otherwise close-ended question was sufficient to mitigate concerns about its reliability).

Notably, Defendants' own expert Dr. Kent Van Liere exercised his judgment and did not include a control group in two of the four studies he commissioned. He chose to include control groups only in the studies that "were designed to assess whether the claimed statements cause consumers to form particular impressions or perceptions." Van Liere Report, ¶50. As stated, Dr. Maronick was not performing a causation study, and thus, a control group was not necessary.

Furthermore, as detailed in Section IV.A., *supra*, whether Monster's misstatements caused consumers' perceptions is irrelevant to this motion. Causal determination of the origination of a consumers' beliefs is not required. Dr. Maronick was tasked with testing what a consumer could perceive about the misstatements after looking at the label, which is the only relevant inquiry now. *ConAgra I*, 302 F.R.D. at 549 (question of causation is a merits based inquiry that is not appropriate at the class certification stage).

Dr. Maronick's control responses, coupled with the fact that a control group was not required for his study, and that the question of causation is irrelevant to this

18

motion, renders Dr. Maronick's Report and testimony admissible even in the absence of a formal control group or conclusions regarding the causation of consumer beliefs.

### d.    The Marketplace Was Properly Replicated

Defendants claim Dr. Maronick's conclusions are unreliable because, allegedly, he did not show survey respondents the entire label from the Monster Energy drink can, and only used highlighted portions of labels. Def. Mem. at 18. This argument is baseless, and more properly suited to the determination of the weight to be given to Dr. Maronick's testimony.

Each survey respondent was shown the front and back label of a Monster Energy and Monster Rehab drink can, and given a chance to review the label in its entirety as many times as desired before answering any questions. Maronick Report, Exhibit C. After respondents were shown the front and back label, they were asked an open-ended question followed by a close-ended question regarding a highlighted claim on the can, and their responses were recorded. Maronick Report, ¶¶ 15-17, Exhibit C. The use of an open-ended question followed by a close-ended question enables the surveyor to obtain information regarding the consumers' top of mind, or first impression, responses, as well as responses that come to mind once the respondent has had time to digest the question. Mehdi Decl., Ex. 2 (Jacob Jacoby, *Are Closed-Ended Questions Leading Questions?*, Trademark and Deceptive Advertising Surveys: Law, Science, and Design at 272 (ABA 2012)).

In accordance with generally accepted principles, Dr. Maronick provided each respondent with the opportunity to view the entire Monster Energy and Monster Rehab drink can, and then asked questions based on highlighted portions of the label. Dr. Maronick's conclusions cannot be rendered unreliable by following generally accepted principles in the field.  Moreover, any challenge to Dr. Maronick's survey methodology properly goes towards the weight given to his testimony, not its exclusion. *See* Section IV.D., *infra.*; *Fortune Dynamic, Inc.*, 618 F.3d at 1036 ("technical inadequacies in a survey, including the format of the questions or the manner in which

19

1  it was taken, bear on the weight of the evidence, not its admissibility") (internal

2  quotations omitted). Thus, since Dr. Maronick's re-creation of the marketplace in his

3  survey was based on generally accepted principles it is admissible, and any argument to

4  the contrary is more properly directed towards the weight given to the testimony.

5              **e.      Dr. Maronick's Questions Were Appropriate**

6         Finally, Defendants criticize Dr. Maronick's questions for being unclear,

7  providing vague responses, or inaccurately reflecting the statements at issue. Again,

8  Defendants' arguments are without merit. Defendants cite no authority stating a survey

9  question must contain every word of a challenged statement or particular phrase in

10 order for the results to be admissible. Likewise, Dr. Maronick's questions were not

11 unclear or vague. Dr. Maronick provided multiple answer choices, included the don't

12 know/not sure option, and included both open and close ended questions, giving

13 respondents ample opportunity to provide thorough and reliable responses. Moreover,

14 "the clarity of the survey questionnaire is a question of fact, best resolved at trial

15 through cross examination." *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120

16 (W.D. Wash. 2012).

17     **D.     Defendants' Challenges Bear on the Weight, Not the Admissibility,**
18            **of Dr. Maronick's Testimony**

19         Even if any of Defendants' criticisms of Dr. Maronick's survey results and

20 conclusions were valid, they do not warrant the exclusion of Dr. Maronick's testimony.

21 It is well settled in the Ninth Circuit that "[c]hallenges to survey methodology go to

22 the weight given the survey, not its admissibility." *Wendt v. Host Int'l*, 125 F.3d 806, 814

23 (9th Cir. 1997); *Fortune Dynamic, Inc.*, 618 F.3d at 1036; *Morton & Bassett, LLC v. Organic

24 Spices, Inc.*, No. 15-cv-01849-HSG, 2017 U.S. Dist. LEXIS 142315, at *22 (N.D. Cal.

25 Sept. 1, 2017) ("technical inadequacies in a survey, including the format of the

26 questions or the manner in which it was taken, bear on the weight of the evidence, not

27 its admissibility"). All the Defendants' challenges to Dr. Maronick's Report are based

28 on his survey methodology. They are, thus, applicable to the weight given to Dr.

20

Maronick's testimony, rather than indicative of exclusion.

### E.    Dr. Maronick's Testimony Has Been Challenged, and Nevertheless Admitted by Multiple Courts

Relying on exaggeration, misconstruction, embellishment and innuendo, Defendants urge this Court to strike Dr. Maronick's Report and testimony simply because, in rare instances, other courts have done so. The Court's gatekeeper function, however, requires it to make its own appropriate determinations by applying *Daubert* and Federal Rule of Evidence 702 principles to the particular facts and circumstances of this case, including the purpose for which the expert's opinion is being proffered. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014). Since 1987, Dr. Maronick has undertaken over 300 litigation-related surveys and provided expert testimony in over 100 consumer-related litigation matters. Maronick Report, Exhibits A & B. Defendants can cite to a miniscule number of challenges against him, which amount to less than 1% of the total survey and litigation work he has done. That is hardly a persuasive reason to exclude Dr. Maronick's Report and testimony here. Furthermore, each of these instances was based on case specific events, and should not bear on the Court's gatekeeper role here.

Interestingly, Defendants blithely ignore their ethical responsibility to provide all relevant case law to the Court. *See* Model Rules of Prof. Conduct, Rule 3.3(a)(2). Counsel has an ethical obligation to acknowledge controlling adverse authority. *Zelhofer v. Metro. Life Ins. Co.*, No. 2:16-cv-00773 TLN AC, 2017 U.S. Dist. LEXIS 47069, at *22-*23 (E.D. Cal. Mar. 28, 2017). Defendants conveniently fail to mention the one case in this District where their expert Dr. Van Liere unsuccessfully challenged Dr. Maronick on substantially similar grounds. *In re NJOY*, 120 F. Supp. 3d 1050 (C.D. Cal Aug. 14, 2015). That case dealt with false advertising on e-cigarette packaging and television commercials. Like here, Dr. Maronick did a survey and proffered opinions as to whether the purported misrepresentations were material to the reasonable consumer. *Id.* at 1075. Much like the current motion, Dr. Maronick's survey and

1   conclusions were criticized for his lack of a control group, improper wording or

2   phrasing, and improper definition of the target audience. *Id.* at 1078. The court found

3   all of these challenges meritless, and admitted Dr. Maronick's testimony in its entirety.

4   *Id.* The *NJOY* court found that Dr. Maronick's testimony would help a trier of fact

5   regarding the implicit safety message in NJOY's labeling. Defendants, although fully

6   aware of this case because it is included in their expert's report, failed to alert the Court

7   to it. Van Liere Report, Exhibit A.

8       Likewise, in *Invisible Fence, Inc. v. Fido's Fence Inc.*, a trademark case, challenges to

9   Dr. Maronick's choice of relevant universe, re-creation of the real-world marketplace,

10  and question design and selection, among other things, failed. The court found that

11  Dr. Maronick was qualified, that his testimony was likely to help the trier of fact

12  regarding the public perception of terms at issue, and that his testimony was based on

13  sufficient data, was the product of reliable principles and methods, and was produced

14  by applying the principles and methods in a reliable manner." *Invisible Fence, Inc.*, 2013

15  U.S. Dist. LEXIS 167642, at *7-*8.

16      Without any analysis, Defendants assert that the issues in the following cases are

17  also applicable here. On the contrary, none of the asserted issues in these opinions fit

18  the specific factual scenario in the case at hand. For example, Defendants posit that

19  *Stubbs v. Teleflora, LLC*, No. 2:13-cv-03279-ODW, 2013 U.S. Dist. LEXIS 177822

20  (C.D. Cal. Dec. 18, 2013), stands for the proposition that Dr. Maronick's report should

21  be stricken because his study in that case allegedly failed to define a relevant universe.

22  In actuality, having decided not to certify the class because individual issues

23  predominated, the court did not even "wade into the ticket of the parties' arguments

24  regarding the report's admissibility." *Id.* at *17, n.3. Defendants suggest that the issue

25  which caused Dr. Maronick's testimony to be excluded in *Teleflora* is also present here.

26  Not so. In *Teleflora*, plaintiffs offered Dr. Maronick's testimony for the purpose of

27  establishing class wide damages. Here, Plaintiffs offer Dr. Maronick's testimony for the

28  purpose of establishing commonality and predominance of issues amongst putative

class members. Dr. Maronick assessed survey respondents' perceptions of statements made on Monster branded energy drink labels; he has not offered any testimony relating to a damages calculation. Thus, *Teleflora* is inapposite. *See also New Look Party Ltd. v. Louise Paris Ltd.*, No. 11 Civ. 6433(NRB), 2012 U.S. Dist. LEXIS 9539 (S.D.N.Y. Jan. 11, 2012) (plaintiffs proffered Dr. Maronick's opinions to support lost sales caused by trademark infringement, which plaintiffs are not doing here).

Similarly, *Salon Fad v. L'Oreal USA, Inc.*, No. 10 Civ. 5063 (DLC), 2011 U.S. Dist. LEXIS 103936 (S.D.N.Y. Sept. 14, 2011), is entirely distinguishable. Plaintiffs and the putative class there were hair salons who were suing manufacturers of haircare products labeled as being sold exclusively in salons when defendants had engaged in a widespread diversion of these products to mass retailers. Dr. Maronick was faulted for surveying consumers of haircare products, rather than hair salons. *Id.* at *29. That is simply not the case here – Dr. Maronick surveyed consumers of Monster branded energy drinks. Plaintiffs' case against Monster is akin to the cases cited as distinguishable by the *Salon Fad* court where consumers were misled by the labeling on packages manufactured by defendants. *See, e.g., Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 (JSW), 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) and *In re Brazilian Blowout Litig.*, No. CV 10-8452 JFW (MANx), 2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011).

In *In re Front Loading Washing Mach. Class Action Litig.*, No. 08-51 (FSH), 2013 U.S. Dist. LEXIS 96070 (D.N.J. July 10, 2013), did not concern mislabeling. Dr. Maronick was retained by defendants to assess the pervasiveness of defects causing a bad smell in washing machines manufactured by defendants. Unlike the matter at hand, the court determined that his survey questions were too general, and he did not know how many people answered his survey or if they owned the washing machines. *Id.* at *21-*22. Dr. Maronick's survey here does not suffer from those flaws -- he asked extensive, specific, and comprehensive questions regarding consumers' perceptions; identified the specific misrepresentations made on Monster Energy and Monster

23

1  Rehab cans; and he knows exactly how many people responded to the survey.  This
2  case is factually distinguishable.

3      Similarly, *A.L.S. Enters. v. Robinson Outdoor Prods., LLC*, No. 1:14-CV-500, 2016
4  U.S. Dist. LEXIS 159046 (W.D. Mich. May 13, 2016), is also distinguishable. In any
5  event, there, Dr. Maronick's testimony was permitted to show how respondents
6  understood certain claims made in advertisements. That is all Plaintiffs proffer Dr.
7  Maronick's testimony for here – to show how consumers perceived the meaning of the
8  misrepresentations made on Monster branded energy drink cans.

9      Defendants selectively quote from several other cases in which Dr. Maronick's
10  testimony was partially stricken on circumstances markedly different than those
11  present in this case.  For example, *Johns v. Bayer Corp.*, No. 09CV1935 AJB DHB, 2013
12  U.S. Dist. LEXIS 51823 (S.D. Cal. Apr. 10, 2013) and *FTC v. Wash. Data. Res.*, No.
13  8:09-cv-2309-T-23TBM, 2011 U.S. Dist. LEXIS 72886 (M.D. Fla. July 7, 2011) are
14  both inapposite – Dr. Maronick was retained by defendants in each of those cases, not
15  to perform a market perception study through a survey such as the one performed in
16  this case, but to provide a narrative of the documentary evidence in the case, which the
17  respective courts found would not be helpful to a trier of fact. Elsewhere parties
18  proffered Dr. Maronick's report for issues that were irrelevant to the case. *See, e.g.,*
19  *Scotts Co., LLC v. Pennington Seed, Inc.*, No. 3:12-cv-168, 2014 U.S. Dist. LEXIS 193938
20  (E.D. Va. Feb. 26, 2014) (finding at a bench trial that Dr. Maronick's opinion related
21  to a nonactionable claim and thus not relevant); *City of Goodlettsville v. Priceline.com, Inc.*,
22  No. 3:08-cv-00561, 2011 U.S. Dist. LEXIS 45597 (M.D. Tenn. Apr. 27, 2011) (Dr.
23  Maronick's opinion regarding consumer's perceptions of hotel taxes was irrelevant to
24  City's claim for recovery of those taxes).

25      Similarly, Defendants' reliance on cases addressing marketplace confusion in
26  trademark disputes has nuances not present in this case. *See, e.g., Seacret Spa Int'l v. Lee*,
27  No. 1:15cv405 (JCC/IDD), 2016 U.S. Dist. LEXIS 29611 (E.D. Va. Mar. 8, 2016)
28  (denying defendant's motion to strike Dr. Maronick's opinion); *Wish Atlanta, LLC v.*

24

*Contextlogic, Inc.*, No. 4:14-CV-51 (CDL), 2015 U.S. Dist. LEXIS 161208 (M.D. Ga. Dec. 2, 2015) (acknowledging Dr. Maronick's likelihood of confusion opinion but discounting it).

In sum, the "'decision to admit expert testimony is committed to the discretion of the district court.'" *In re NJOY*, 120 F. Supp. 3d at 1069 (citation omitted); *Ortega v. Natural Balance, Inc.*, No. 13-05942-AB (Ex), 2014 U.S. Dist. LEXIS 190386, at *4 (C.D. Cal. Oct. 29, 2014) ("the trial court has wide discretion to admit or exclude expert testimony"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 654 (C.D. Cal. Aug. 1, 2014) ("'judges are entitled to broad discretion when discharging their gatekeeping function'") (citation omitted). Dr. Maronick's expert opinion is helpful to a trier of fact here – it informs them how reasonable consumers understood the misstatements at issue in this litigation.  The Court should employ its broad discretion to deny Defendants' motion to strike Dr. Maronick's report and testimony.

## V.    **CONCLUSION**

At the class certification stage, all that is required is that Plaintiffs' expert testimony be reliable, relevant, and useful in the evaluation of the class certification requirements. Plaintiffs have amply demonstrated that Dr. Maronick is qualified and has provided testimony that is both relevant to the case and reliant on a strong foundation of facts and data. Plaintiffs have also shown that Dr. Maronick's testimony will be useful in the evaluation of the class certification requirements. Thus, for the foregoing reasons, the Defendants' Motion to Strike the Declaration of Thomas J. Maronick should be denied.

DATED: November 13, 2017             Respectfully submitted,

THE MEHDI FIRM, PC


/s/Azra Z. Mehdi
                 Azra Z. Mehdi

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
(415) 293-8039
(415) 293-8001 fax

azram@themehdifirm.com

PLS. OPP MTN. STRIKE EXPERT MARONICK          5:12-cv-02188 VAP (KKx)

## PROOF OF SERVICE

Townsend, et al. vs. Monster Beverage Corporation, et al.
CASE NO.: 5:12-cv-02188 VAP (KKx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. My business address is: One Market, Spear Tower, Suite 3600, San Francisco, CA 94105.

That on November 13, 2017, I served the following document(s) entitled: **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF THOMAS J. MARONICK UNDER FEDERAL RULE OF EVIDENCE 702** on ALL INTERESTED PARTIES in this action via the Court's ECF Notification system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 13, 2017, at San Francisco, California.

_____/s/ Azra Z. Mehdi_____
AZRA Z. MEHDI