# EXHIBIT 3

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


   * * * * * * * * * * * * * * * * *
                                    *
   In Re:  Dial Complete Marketing   *  MDL 11-md-2263-SM
   and Sales Litigation              *  November 16, 2016
                                     *  10:10 a.m.
   * * * * * * * * * * * * * * *    *



                    TRANSCRIPT OF MOTION HEARING
               BEFORE THE HONORABLE STEVEN J. McAULLIFE


   Appearances:


   For Carter:              Lucy J. Karl, Esq.
                            Shaheen & Gordon PA


   For Poynton              Adam J. Levitt, Esq.
   and Pearson:             Edmund Aronowitz, Esq.
                            Grant & Eisenhofer PA



   For Dial Corporation:    Edwin John U, Esq.
                            Patrick Haney, Esq.
                            Tracie Lynn Bryant, ESq.
                            Christa Laser, Esq.
                            Kirkland & Ellis LLP

                            Robert H. Miller, Esq.
                            Sheehan Phinney



   Court Reporter:          Sandra L. Bailey, LCR, CM, CRR
                            Official Court Reporter
                            U.S. District Court
                            55 Pleasant Street
                            Concord, NH  03301
                            (603) 225-1454
```

```
 1            THE COURT:  I thought what they were saying
 2  was this methodology will isolate a value attributable
 3  to that feature as opposed to price of the product which
 4  would vary all over the place.
 5            MR. U:  So, your Honor, as I'll explain,
 6  plaintiffs' theory, and we see this in their complaint
 7  and in their briefs, is that if not for the challenged
 8  advertising claims the price of the product would have
 9  been lower, and so that there's a difference in that
10  market price which I think is what you're describing.
11            THE COURT:  I might be overly simplistic about
12  it, but didn't sell for a uniform price everywhere.
13            MR. U:  Yes, but what, your Honor, the
14  plaintiffs argue is that there was a uniform percentage
15  reduction in price that would have occurred if not for
16  the challenged claim.  But they argue in their briefs --
17            THE COURT:  I took that as meaning I can take
18  a methodology and I can within acceptable statistical
19  analytical parameters identify a value to be assigned to
20  that claim, so I don't care what the price of the
21  product was in Minnesota versus Florida, who cares, that
22  I can assign this value to that claim.  So everybody who
23  bought the soap, whatever they paid for it and wherever
24  they bought it, they paid 2 cents for that claim.
25            MR. U:  So, your Honor, what the plaintiffs
```

1 argue is that, the rub is, your Honor, in order to make
2 this a class-wide damages model --
3          THE COURT: I'm not even there.
4          MR. U: Yes.
5          THE COURT: Is that what they're claiming?
6          MR. U: So --
7          THE COURT: From your point of view?
8          MR. U: Their briefs seem to argue that they
9 have come up with that value for the challenged claim
10 that can be applied to whatever the price was wherever
11 you bought it.
12          THE COURT: All right.
13          MR. U: And what we will explain, your Honor,
14 is that this is not what Boedeker does, and I'll go
15 through a preview of the evidence on that, and it
16 creates a <u>Comcast</u> problem.
17          THE COURT: But we agree that my perception of
18 what they're claiming, we agree that's what they're
19 claiming.
20          MR. U: That if not for the challenged claim
21 you reduce the price because of the value of that claim.
22          THE COURT: Which remains uniform.
23          MR. U: So they say, yes, your Honor.
24          THE COURT: All right. Okay.
25          MR. U: Second, your Honor, we'll talk about

1  Q. So you talked about market price. How is
2 willingness to pay determined as a matter of economics?
3  A. Well, willingness to pay says something only
4 about the demand side. So I haven't quite described how
5 we get to the market price, but willingness to pay says
6 something about, you know, the demand side is the
7 consumer side, it's the simplistic utility value that
8 consumers may place on products, but it doesn't say what
9 the market price is.
10  Q. How would you illustrate willingness to pay in
11 terms of the economic supply and demand curves?
12  A. Well, I put it into the diagram here if we go
13 to the next slide. You can see that willingness to pay,
14 you have a fancy way of saying is the height of the
15 demand curve, but what it's really saying is that tells
16 us willingness to pay and how much we'd be willing to
17 buy at various, you know, at various prices, but it
18 doesn't tell us the price because we see in this diagram
19 that when you have the demand curve, you need to put in
20 the supply curve, and it's the supply curve and demand
21 curve interacting together that frankly do what neither
22 individually can do, which is determine the market
23 price. So if we're looking at page six, we've got a
24 demand curve, but by itself that doesn't tell us price,
25 but that's where willingness to pay comes in. We've got

Case 5:12-cv-02188-VAP-kk Document 158-3 Filed 01/12/18 Page 6 of 19 Page
Case 1:14-md-02263-SM Document 223 Filed 12/13/16 Page 104 of 193 Page
ID #:6233

104

1  the supply curve.  That tells us how much producers will
2  provide to the market at a number of different prices,
3  but it doesn't tell us the actual price.  You need to
4  take supply and demand together to figure out what price
5  is.  But this diagram is also showing us that
6  willingness to pay is not price.
7       Q.   And to tie it to this case, how does this
8  slide compare to or reflect what Mr. Boedeker has done
9  in this case?
10      A.   Well, I think he said a number of times, you
11 even asked him about a price premium, and his answer
12 diverted off to willingness to pay.  So he's measuring
13 willingness to pay.  He's not measuring changes in
14 market price.
15      Q.   Now, sir, as another way of illustrating this
16 concept have you prepared and brought with you equations
17 to describe a general approach to damages on one hand
18 and Mr. Boedeker's work in this case on the other?
19      A.   I have, yes.
20      Q.   How would you illustrate, then, a general
21 price premium theory for figuring out what would happen
22 to the price of a product if you removed the challenged
23 attribute?
24      A.   And I can describe it with this slide here,
25 but it might be easier if I can point because I need to

Case 5:12-cv-02188-VAP-kk Document 158-3 Filed 01/12/18 Page 7 of 19 Page ID #:6234
Case 1:14-md-02263-SM Document 223 Filed 12/16/16 Page 105 of 193 Page ID #:6234

105

```
 1  to parts of this.
 2       Q.   So have you brought with you a board that puts
 3  some equations like we see on the slides?
 4       A.   Yes.
 5            MR. U:  Your Honor, may the witness step down
 6  and pull up a display board.
 7            THE COURT:  Sure.  I think you can point right
 8  on the screen though.
 9       Q.   Right.  Just write on the easel.
10       A.   I think the screen will take a pointer as
11  well.
12            THE COURT:  It's a digital screen.
13            THE WITNESS:  Oh, okay.  Sometimes I worry I
14  don't know how to erase it once I point.  All right,
15  so --
16       Q.   So what's the top equation, sir?
17       A.   So normally when we think about claimed
18  damages, we're thinking about a claimed price premium
19  that we multiple by the number of units.  If you think
20  about class-wide damages a lot of times people think all
21  I need to do is that that premium times the quantity and
22  likewise isn't that the answer or is that the answer.
23  But I want to point out two things.  One, to get that
24  claimed price premium, it's the percentage change in
25  price, that's what this term means, times the price, and
```

1  that will give you the dollar value of the premium times
2  the number of units.  Now, the only point I'll make is
3  --
4           THE COURT:  Why couldn't you just do the value
5  of the price premium times the units?
6           THE WITNESS:  Yes, but we have to be careful
7  here because this is, this here is a percentage change
8  in price, and that's okay sometimes.
9           THE COURT:  Is it a change or is it just
10 inherent in the price?  It's part of P, but it's not a
11 function, it's a part of P.  Included in P is some
12 value.
13          THE WITNESS:  That's what you're trying to
14 extract.  So if this is ten percent times a dollar, that
15 gives you ten cents which I think is what you're saying.
16          THE COURT:  I'm saying as an English major, in
17 the dollar is ten cents of premium for 99 percent.  Why
18 make it more complicated than that?
19          THE WITNESS:  Later on we'll get into a
20 problem with this percent change approach, but you're
21 absolutely right --
22          THE COURT:  All right.
23          THE WITNESS:  If you're trying to say there's
24 some price premium, all I'm saying is how you get there.
25          THE COURT:  Yeah, I'm saying there is a price

1  premium, can I derive it.  And you're saying, well,
2  here's one way to do it that looks awfully overly
3  flexible to me.  Again, English major.
4             THE WITNESS:  Okay, maybe we if we go back
5  down here and then come back to your question, that will
6  take care of it.
7      Q.   BY MR. U:  So what does the equation on the
8  bottom of the board and which is also shown on slide
9  eight represent?
10     A.   Right, and this will explain why I set it up
11 this way because you might think of this as a percentage
12 change in price times a price identifies that dollar
13 amount you're talking about, but that's not what Mr.
14 Boedeker did.  He doesn't have this.  He has this.  He
15 substitutes in or he basically has calculated a
16 willingness to pay or a percent change in willingness to
17 pay, that's his 10.89 percent that he talked about, so
18 that's why I set this up, because this is what he's done
19 and he wants to say take that 10.89 percent, which is a
20 percentage change in willingness to pay times prices to
21 get a claimed price premium.  And I'm saying that what
22 he's doing is different from the correct way of doing
23 it.  That's why I set up the equations like that.  So
24 the bottom line, the point I make is he's not doing --
25 looking at the price changes, he's looking at

1  willingness to pay changes.  And you're going to get an
2  incorrect number.
3             THE COURT:  Why would there be a price change
4  if it's an inherent component of the price as set?  How
5  do I identify what that number is?
6             THE WITNESS:  Exactly right.  So this is
7  claimed damages, so we need to figure out how much of
8  this, if there is damages, how much of this is too much
9  that's in --
10            THE COURT:  No, how much of that represents
11 the value of 99 percent germ free whatever it is?
12            THE WITNESS:  Yes.
13            THE COURT:  Not change, price doesn't change.
14 Price is what it is.  Inherent in that price is some
15 amount?  Maybe.
16            THE WITNESS:  Right.
17            THE COURT:  Some amount.  And how can we find
18 out what that is?
19            THE WITNESS:  That's the work --
20            THE COURT:  But there's no functional change
21 over time.
22            THE WITNESS:  That's why you need --
23            THE COURT:  It is what it is in other words.
24            THE WITNESS:  You're absolutely right, that
25 the prices were what they were, $1.98 for the bottle.

1   And the question is --
2              THE COURT: Or 2.98 or 2.10 or 16 cents. It
3   doesn't matter where. There is some element of that
4   number that reflects the claimed 99 percent.
5              THE WITNESS: Assuming that it's had impact.
6   So that you have to test.
7              THE COURT: I'm of the school that they
8   wouldn't say it if they didn't think people were going
9   to rely.
10             THE WITNESS: That's the empirical analysis.
11  If I understand your question, yes, you're trying to
12  figure out how much of that price is the inflation
13  caused by the label.
14             THE COURT: No, I guess I don't follow you.
15  It's not an inflation. The price is calculated. It's
16  comprised of a lot of elements, one of which is this
17  attribute. Not changed over time. Not fluctuating or
18  move any of the function, it's a component. Is it
19  possible to identify it I guess is the question, and
20  then secondly, as in Mr. Boedeker's method, does it do
21  that.
22             THE WITNESS: And I'm going to address all
23  those. Can I have a magic marker?
24             THE COURT: In other words, you know, it
25  doesn't matter what, who charges what where. Whatever

1 the price is, there is an element attributable to that
2 claim.
3         THE WITNESS: And --
4         THE COURT: Not a changing element.
5         THE WITNESS: No, no, no, and that's -- I'm
6 not saying that, so I wanted to put some examples
7 because I might be using words that it's not as clear as
8 they should be.
9         THE COURT: Again, I apologize, I'm the
10 English major, so you have a job ahead of you.
11         THE WITNESS: The point which I think you were
12 trying to say is, well, it could be a $1.98, it could be
13 $2.53, it could be $3.05.
14         THE COURT: The price.
15         THE WITNESS: The price.
16         THE COURT: Correct.
17         THE WITNESS: What I was trying to say is
18 within that, okay, and you're correct, we're trying to
19 figure out, now I use the term inflation, but is there a
20 component that's attributable to the claim within that
21 price.
22         THE COURT: Correct.
23         THE WITNESS: So, what Mr. Boedeker is saying
24 is he's got this 10.89 percent. So he's saying if you
25 take 10.89 percent times the $1.98, that's the answer,

```
 1   or times the 2.53, that's the answer, or the 3.05,
 2   that's the answer.
 3            THE COURT:  Or total revenue, that's the
 4   answer.
 5            THE WITNESS:  But I'm going to say why that
 6   doesn't work.
 7            THE COURT:  Okay.
 8            THE WITNESS:  But I just want to make sure
 9   we're on the same wavelength in a sense that I'm not
10   saying anything about these changing over time.  We're
11   still trying to figure out a component, if any, that is
12   due to the challenged claim, and that's why I use the
13   term, you know, whether this is an inflated price
14   because of the challenged claim.
15            THE COURT:  Okay, you lose me when you say
16   that.
17            THE WITNESS:  Okay, so forget that last part.
18   What we're --
19            THE COURT:  Inflate, deflate.  It's either
20   there or it's not and it's a number.
21            THE WITNESS:  These prices are actual market
22   prices, yes, those are there.
23            THE COURT:  So the premium is either there or
24   it's not and it's a number.
25            THE WITNESS:  And it's a number, and the only
```

```
 1  place where I'm trying to take it just a little bit
 2  farther is, part of the analysis is would the $1.98 have
 3  been a $1.88 without the challenged claim.  That ten
 4  cents would be what I was calling the inflation due to
 5  the challenged claim.  That's where it was getting
 6  confusing.  But the price is a $1.98.  If there's a
 7  component in there wrongfully due to the challenged
 8  claim, then without the challenged claim maybe that
 9  would have been a $1.88.  So the price, claimed price
10  premium would be 10 cents in that example.
11           THE COURT:  All right.  But don't you
12  statistically have to do it as a percentage?  You
13  couldn't figure it out for each price at each store in
14  each state.
15           THE WITNESS:  Actually there's a couple of
16  different ways to do it.  You could try a percent, but
17  I'll show you why there's a problem with that, or you
18  could do an analysis to say the value of that claim is
19  25 cents as opposed to a percent, because when you use a
20  percent there's many different reasons why these prices
21  are different.
22           THE COURT:  If you say that, then somebody who
23  bought it at $1.50 is going to get paid back 25 cents
24  when 25 cents doesn't represent the value of the
25  attribute in that bar of soap.
```

1    THE WITNESS: Well, that's what the analysis
2 has to figure out, what is the correct amount. And what
3 I'm going to try to show you is --
4    THE COURT: But you're suggesting there could
5 be a fixed number, but the soap wasn't sold at a fixed
6 price. So a fixed number would distort the recovery for
7 a plaintiff if you said it was 25 cents. Maybe it was a
8 25 cent attribute in a $2.00 bar of soap, but not $1.50
9 a bar of soap. So you wouldn't want to give 25 cents to
10 the guy who bought it for $1.50, maybe they would, but I
11 doubt it.
12    THE WITNESS: What I'm trying to -- what my
13 ultimate conclusion is, these are all problems of why
14 you can't use a common proof. That's why I was trying
15 to give this as a foundation.
16    THE COURT: If it's a percentage and it's
17 identifiable, you can derive it, apply it to total
18 revenue. Why wouldn't that work?
19    THE WITNESS: If you want we can go right to
20 those slides.
21    MR. U: Well, so, if I may, your Honor, with
22 that question.
23    THE WITNESS: We've got some slides that
24 address that.
25    Q.   BY MR. U: Let me ask you one question to pick

1    A.   Well, and all of this goes into the totality
2    of what I looked at for my opinion, but if you look at
3    wholesale prices, and just make sure it's clear, that's
4    the price that Dial's actually charging in the next, in
5    the chain of distribution, so like to wholesalers or
6    distributors.  It's not the price that they charge to
7    consumers, because they go through intermediaries to get
8    the product to the market.
9    Q.   And we will get to that.  So when you start by
10   looking at wholesale prices, what does your analysis
11   show?
12   A.   Well, I've got the Dial Complete with the
13   challenged claim on the left.  I'm got other foaming
14   products on the right without the challenged claim.  And
15   what you see is that Dial actually does what's called
16   line pricing.  The prices of all those products are the
17   same.  You don't see a higher price for the product that
18   has the challenged claim.  And in fact they're charging
19   the same price for all of these products.
20   Q.   What do you mean by line pricing?
21   A.   Well, this is, you know, think about Diet
22   Coke, Coke Zero, regular Coke with sugar.  Coke doesn't
23   try to charge different prices for each of those, they
24   all have the same price, and there's reasons why
25   companies do that.  But at the end of the day --

Case 5:12-cv-02188-VAP-kk Document 158-3 Filed 01/12/18 Page 17 of 19 Page
Case 1:11-md-02263-SM Document 223 Filed 12/26/16 Page 224 of 258 Page
ID #:6244

124

```
 1              THE COURT:  Does it matter that consumers
 2   aren't paying that price?
 3              THE WITNESS:  I'm sorry?
 4              THE COURT:  Does it matter that consumers
 5   aren't paying that price?  No consumer paid $1.84 unless
 6   they bought it at, off-loaded, whatever, fell off the
 7   truck.
 8              THE WITNESS:  I think the point I'm trying to
 9   make here is when the prices are the same, you don't see
10   Dial I think extracting a higher price for the
11   challenged claim at the wholesale level.  In other
12   words, if there was false advertising and they were
13   tying to get a higher price, they're not getting it, the
14   issue is okay, maybe there's price differences at the
15   retail level that you and I pay, but it wouldn't make
16   sense if a company was trying to do that, to charge the
17   same price and then not be able to extract if that's
18   what they were trying to do, that price premium.  This
19   is one component of what I'm going to show you but
20   that's part --
21              MR. U:  So, if I could ask a few follow-ups on
22   that point, your Honor, I think it may elaborate the
23   point.
24         Q.   This is a case alleging that Dial Complete got
25   more than it should have because of the challenged
```

1  can be done but I'm not going to tell you how, but it
2  hasn't been done?
3              THE WITNESS:  Not in this case, correct.
4              THE COURT:  But you think it could be done?
5              THE WITNESS:  I'm not saying the following.
6  I'm not saying that this is a problem across all
7  consumer class action cases.
8              THE COURT:  Because that's what it sounds
9  like.
10             THE WITNESS:  I'm saying it's a problem here.
11             THE COURT:  Why wouldn't it be a problem
12 across, with respect to all consumer product
13 misrepresentation claims, why wouldn't the same analysis
14 apply to every single consumer product where there was
15 an absolute undeniable misrepresentation?  Would you
16 always be in here saying, well, maybe, but there's no
17 remedy there because from a forensic economics point of
18 view, it can't be calculated.
19             THE WITNESS:  Well, let me --
20             THE COURT:  Or are you saying that?
21             THE WITNESS:  No, no, I want to answer your
22 question directly.
23             THE COURT:  First tell me if you're saying it.
24             THE WITNESS:  I'm not saying you can never do
25 it.  What I want to do is tell you --

Case 5:12-cv-02188-VAP-kk Document 158-3 Filed 01/12/18 Page 19 of 19 Page ID #:6246
Case 1:11-md-02265-SM Document 223 Filed 12/28/16 Page 233 of 233

233

1      THE COURT:  I will take it under advisement.
2      (Hearing concluded at 5:20 p.m.)
3
4
5
6
7
8
9
10
11
12           C E R T I F I C A T E
13
14      I, Sandra L. Bailey, do hereby certify that
15   the foregoing transcript is a true and accurate
16   transcription of the within proceedings, to the best of
17   my knowledge, skill, ability and belief.
18
19
20   Submitted: 12/28/2016
21                                 _____
                                    SANDRA L. BAILEY, LCR, CM, CRR
22                                  LICENSED COURT REPORTER, NO. 15
                                    STATE OF NEW HAMPSHIRE
23
24
25